1          UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3            HONORABLE ALEX KOZINSKI

4        UNITED STATES DISTRICT JUDGE PRESIDING

5                  - - -

6
VEDERI, LLC,                        )
7                      PLAINTIFF,    )
                                     )
8     VS.                            )  NO. CV 10-7747 AK
                                     )
9     GOOGLE, INC.,                  )
                      DEFENDANT,     )
10    _____)

11

12

13        REPORTER'S TRANSCRIPT OF PROCEEDINGS

14             PASADENA, CALIFORNIA

15          TUESDAY, NOVEMBER 22, 2011

16

17

18    _____

19          KATIE E. THIBODEAUX, CSR 9858
            U.S. Official Court Reporter
20          312 North Spring Street, #436
            Los Angeles, California 90012
21

22

23

24

25

```
 1   APPEARANCES OF COUNSEL:

 2

 3   FOR PLAINTIFF:

 4        CHRISTIE, PARKER & HALE LLP
          BY:  DAVID A. DILLARD
 5        -and- STEVEN ERICK LAURIDSEN
          350 West Colorado Boulevard
 6        Suite 500
          Pasadena, CA  91109-7068
 7

 8

 9   FOR DEFENDANT:

10        BOSTWICK & JASSY
          BY:  GARY L. BOSTWICK
11        12400 Wilshire Boulevard
          Suite 400
12        Los Angeles, CA  90025

13        -and-

14        ROPES AND GRAY
          BY:  SASHA RAO
15        1900 University Avenue
          Sixth Floor
16        East Palo Alto, CA  94303

17        -and-

18        ROPES AND GRAY
          BY:  CHRISTOPHER J. HARNETT
19        -and- TODD SIMPSON
          1211 Avenue of the Americas
20        New York, NY  10036-8704

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1        LOS ANGELES, CALIFORNIA; TUESDAY, NOVEMBER 22, 2011

 2                         10:44 A.M.

 3                         - - - - -

 4

 5        THE CLERK:  In the matter of Calendar Item Number

 6   1, Case Number CV 10-7747, Vederi, LLC versus Google,

 7   Inc., counsel, please state your appearances for the

 8   record.

 9        MR. DILLARD:  Good morning, your Honor.  David

10   Dillard of Christie, Parker and Hale on behalf of

11   plaintiff Vederi.  With me at counsel table is Steven

12   Lauridsen of our firm.  Also with us today are the

13   principles of Vederi and the inventors of the patents in

14   suit, Enrico Di Bernardo and Dr. Luis Goncalves.

15        THE COURT:  Okay.

16        MR. BOSTWICK:  Good morning, your Honor.  Gary

17   Bostwick of Bostwick and Jassy representing Google, Inc.

18   Here today arguing will be Sasha Rao and Chris Harnett

19   from Ropes and Gray.  Todd Simpson is joining them at the

20   table, and we also have from Google's corporate counsel,

21   Jennifer Polse.

22             Your Honor, the parties have agreed if it is

23   agreeable to the court to have the following order of

24   presentation which would be in eight different parts:

25   The introduction, and, then, as you can see there from
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   the slide, where preambles are a limitation and then the

2   various terms.  Vederi would go first, and then Google

3   would follow.  And it would happen then in a very

4   rigorous fashion for each of the eight steps.

5           However, if the court has any other desires

6   with respect to the order of argument or anything else,

7   we are happy to try to adjust that.

8       THE COURT:  That is fine.

9       MR. BOSTWICK:  Thank you, your Honor.

10      MR. DILLARD:  Your Honor, when we received the

11  list from Google as to the sequence of events that we

12  would propose to the court, I don't recall anything about

13  a technology tutorial or legal principles, but,

14  nevertheless, we can discuss that.

15      THE COURT:  It is your presentation.  So you

16  have -- so you say whatever you think will help your

17  clients.

18      MR. DILLARD:  Thank you, your Honor.

19          The patents in suit are claimed methods for

20  enabling the visual nagivation of a geographical area,

21  and they require that the method be practiced in a

22  environment set forth in the preamble which is a

23  system --

24      THE COURT:  Maybe it would be helpful to start by

25  explaining to me what these patents do just in plain

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    English.  They don't involve taking a picture.  So I

2    guess that is not patentable.  So what is it specifically

3    the two patents -- what technology, what is the

4    invention?

5         MR. DILLARD:  Well, the invention is a -- you have

6    seen the product Street View where a user at a user

7    terminal can plug in an address.

8         THE COURT:  I do understand the process.  I am

9    just wondering what part of the process are you claiming

10   is an invention.  You are not claiming taking a

11   photograph on the street is the invention.  You are not

12   claiming a PC terminal is an invention.

13        MR. DILLARD:  Correct.

14        THE COURT:  So tell me what it is that this

15   invention does.  There are two patents and they could

16   have two inventions.  And what part of the process, what

17   exactly is it that is claimed to be the invention?

18        MR. DILLARD:  Your Honor, there are two patents,

19   but they are not necessarily separate inventions.

20        THE COURT:  Understand.

21        MR. DILLARD:  Each of the patents has numerous

22   claims.

23        THE COURT:  Together, what is it that they are?

24        MR. DILLARD:  Well, they claim a method, and the

25   method is gathering -- the method is, as claimed, which

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   is, of course, the invention relates to a system where

2   you have a user terminal and a remote processor and an

3   image source, database, and the method claims steps in

4   receiving a request or user input for an image of a

5   location.  The processor will then retrieve the image of

6   the location, send it back for display on the user

7   terminal.  And then there are a variety of things that

8   could happen.  There could also be displayed an icon on

9   the image or associated with an image.  One can press or

10  click on the icon.

11      THE COURT:  I am not sure you understand my

12  question.  I do know how the process works.  Okay.  I do

13  know.  I am trying to figure out what is the invention

14  here.  I take it that putting an image and uploading it

15  so somebody can access it from a computer terminal is not

16  the invention.  Right?  Anybody can do that.

17      MR. DILLARD:  Yes.

18      THE COURT:  So what is it that -- what was it that

19  was claimed by the plaintiffs?

20      MR. DILLARD:  In the broadest claims, it would

21  be --

22      THE COURT:  Try not to be technical.  Let's see if

23  we can use just plain English so I can understand what it

24  is.

25      MR. DILLARD:  It is an economical way of providing

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    images and particularly composite images to a viewer that

2    can then visually navigate through a geographical area.

3         THE COURT:  Economic, you mean so in terms of

4    amount of storage, so the storage of these images?

5         MR. DILLARD:  Yes.  In the -- actually, some of

6    the more specific claims.  But there is a process by

7    which instead of recording and storing the video frames,

8    the one to one correspondence to an exact location, the

9    frames are stored with respect to a street segment, and

10   then when a user makes a request for a particular

11   address, the processor is programmed to use the street

12   segment and then that the address would be on and

13   calculate where that particular address would lie on that

14   street segment, pull up the image from that and be able

15   to give that to the user.  It is a much more economical

16   way than having a one to one correspondence with every

17   video frame that could be requested.

18        THE COURT:  Okay.

19        MR. DILLARD:  And so that is -- and, then,

20   particularly useful, is the use of composite images in

21   our, I think the provisional application for which all

22   the patents claim priority, there is a discussion about

23   the, basically, the sacrifice of location information so

24   that you are not getting an exact location but by having

25   a composite image, you don't need the accuracy in order

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    to fulfill the purpose of this which is to enable

2    somebody to navigate through an area.  In other words, it

3    doesn't have to be surveyor-quality type location

4    information.

5              Is this answering your question?

6         THE COURT:  I think so.  Go ahead.

7         MR. DILLARD:  All right.  The claims have been

8    written from the standpoint of trying to capture those

9    steps that are performed by the processor and the image

10   source or database, and we have disputes over the issues

11   of whether or not the preamble adds a limitation to the

12   invention.  I may be getting ahead of myself.

13             We agreed that a portion of the preamble does,

14   to the extent that it sets the environment in which the

15   method is practiced, but, beyond that, it doesn't add any

16   specific steps or doesn't modify the steps.  Another

17   portion of the preamble --

18        THE COURT:  That is your position.  That is not

19   Google's position?

20        MR. DILLARD:  That's correct.

21        THE COURT:  Google thinks it is a limitation;

22   right?

23        MR. DILLARD:  We both agree that it is a

24   limitation as to the environment in which the method must

25   be practiced.  I don't want to put words in their mouth.

```
 1    I feel confident that we agree with that much.  They go

 2    beyond that and claim that it is a further limitation on

 3    the steps.  I don't see how that could be, but that is

 4    what I understand their position to be.  The second part

 5    of the preamble is a statement of purpose, you know, a

 6    method for enabling the visual nagivation of a

 7    geographical area.

 8              And the issue there is Google has

 9    characterized that that portion of the preamble as saying

10    a method for visual nagivation as opposed to for enabling

11    visual nagivation, and there is a significant difference

12    there because if you are talking about visual nagivation,

13    it is hard to think of a claim that wouldn't involve the

14    user.  But if you have a claim for enabling visual

15    nagivation, you can separately claim just those steps

16    that are performed by the processor.

17              And so that is what we believe has happened.

18    I am getting into the actual claim constructions.  If the

19    court would like me to continue, I would be more than

20    happy to.

21              THE COURT:  Sure.  Why don't you go ahead.

22              You have got the preamble issue; right?

23              MR. DILLARD:  Yes.

24              THE COURT:  And then --

25              MR. DILLARD:  Then we have who performs the actual
```

1    steps, and there is two groups of steps.

2           THE COURT:  Who performs or it has to be formed by

3    the user?

4           MR. DILLARD:  There is two groups.  One is what we

5    might refer to as a receiving step.  The first step in

6    the claims is receiving a first user input and --

7           THE COURT:  Specifying first location?

8           MR. DILLARD:  Yes.  I didn't quite understand what

9    those two first -- what work those two first do in that

10   phrase.

11          MR. DILLARD:  In the claims, there is a first user

12   input and the second user input, and the first

13   one specifies the first location and the second specifies

14   the second location.

15          THE COURT:  How does that work?

16          MR. DILLARD:  The effect of that is if a user say

17   puts in an address, then that address or that request

18   will go to the processor, an image associated with that

19   address will then be retrieved and sent back for display

20   on the user's display.

21              So as far as receiving a request, it is our

22   position that the processor which is in this case under

23   the control of Google has to be receiving a request.

24   Otherwise, you would never be able to retrieve an image

25   and send it back for display.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

 1          The -- for this receiving step, Google seems

 2    to take the position that, well, it is a user terminal

 3    that receives not the processor.

 4          THE COURT:  Are you still answering my question?

 5          MR. DILLARD:  I may have lost track of the

 6    question.

 7          THE COURT:  My question was what first -- don't

 8    get lost.  If I am going to ask a question, I really sort

 9    of expect an answer.

10          MR. DILLARD:  Yes, your Honor.

11          THE COURT:  If you meander off on other things, I

12    get really confused.  So my question had to do with what

13    work those two first do in that phrase, and you said --

14    let me just tell you how far I got before you lost me.

15          MR. DILLARD:  Yes, sir.

16          THE COURT:  The user puts in initial location,

17    okay, and everything you said after that, I didn't track.

18    So let's go back to my question and to your explanation

19    starting with the first, first user input.  Okay.

20          MR. DILLARD:  So receiving a first user input

21    would be a request by the user that specifies a first

22    location within the geographical area.

23          THE COURT:  Okay.  So the user says Colorado and

24    Orange Grove or something like that?

25          MR. DILLARD:  Or 350 Colorado.  That is our

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  address..

2          THE COURT:  I mean that is first.

3          THE COURT:  East or west?

4          MR. DILLARD:  West, your Honor.  It is about

5  two blocks.

6          THE COURT:  Okay.  Just trying to actually

7  visualize, I am pretty familiar with Pasadena.

8          MR. DILLARD:  Yes.

9          THE COURT:  So they put that in, and what is

10  the -- you said the first.  There must be a second or

11  third?

12          MR. DILLARD:  Right.  And a second user input

13  would simply be a request for another location.  So a

14  second location --

15          THE COURT:  Okay.  So what if they put in a second

16  location in San Francisco, Seventh and Mission?  I am

17  just trying to understand what --

18          MR. DILLARD:  All right.  That would -- we

19  suddenly jump over to San Francisco.

20          THE COURT:  Let's make it simple.  Let's say they

21  put in 350 Colorado, and then they put in 375 Colorado.

22          MR. DILLARD:  It would the image would jump to

23  something on 375.

24          Now, the second input could be clicking on an

25  arrow pointing up and down the street or -- well, if that

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    was the case, then the image would move a certain

 2    distance.

 3         THE COURT:  Okay.  This is part of your -- this

 4    phrase, receiving the first user input specifying a first

 5    location, that is part of your claim; right?

 6         MR. DILLARD:  Yes, your Honor.

 7         THE COURT:  Okay.  So I am now asking what

 8    limitation does that -- what work does that do in terms

 9    of the patent.  I mean saying you can do this in many

10    locations and you can get different locations, what

11    exactly does this do in terms of the claim?

12         MR. DILLARD:  Well, it enables the processor to

13    pull up the image of that first location, for display at

14    the user terminal.

15         THE COURT:  Let's say we change it to "a" instead

16    of "first."  So where it says "receiving a first user

17    input specifying first location," let's just say we

18    remove the word "first."

19         THE COURT:  You still get the image; right?

20         MR. DILLARD:  You would still get an image.  The

21    use of "first" also designated the initial.  In other

22    words, when you pull up the program, the initial request

23    for an image of a location would be the first.

24         THE COURT:  What I am trying to understand is, is

25    there something about the claims of the patent where
```

1   moving from the first location to some place else is part

2   of your claim?  There is a first location, and then there

3   is something that --

4           MR. DILLARD:  Your Honor, in looking at -- I

5   suspect you are looking at Claim 1 of the 760 patent.

6   The third step is receiving a second user input

7   specifying a nagivation direction relative to the first

8   direction.  That would be, for example --

9           THE COURT:  That would be like the arrow?

10          MR. DILLARD:  An arrow or a button with an arrow

11  so you can move down the street.

12          THE COURT:  So putting in a second address would

13  be just like putting a first location.  So if you then

14  move to Seventh and Mission?

15          MR. DILLARD:  Yes.

16          THE COURT:  So this is a first location, and then

17  you would have arrows or something that would move it,

18  and where is that provided in the patent, the thing about

19  the arrow nagivation to a different location?

20          MR. DILLARD:  In the claim or in the

21  specification?

22          THE COURT:  Either.

23          MR. DILLARD:  In the claims, if you are looking

24  at -- why don't we make sure we are looking at the same

25  page.  What document are you reading from?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    MR. DILLARD:  I am looking at Vederi's opening

2  claim construction brief.

3    THE COURT:  Okay.  Hold on a second.  This is

4  Document 49?

5    MR. DILLARD:  Document 51, your Honor.

6    THE COURT:  51.  The opening construction brief --

7  right -- October 5th, 2011?

8    MR. DILLARD:  Yes.

9    THE COURT:  So I got it.

10   MR. DILLARD:  And there is a Joint Appendix A

11  which is a full text of the asserted claims.

12   THE COURT:  Okay.

13   MR. DILLARD:  This would be at Page 31 of 54.

14   THE COURT:  Excuse me.

15   MR. DILLARD:  Page 31 of 54, at least that is the

16  little --

17   THE COURT:  Is this the handwritten numbers.

18   MR. DILLARD:  Oh.  The handwritten numbers at the

19  bottom would be -- I'm sorry.  Page 26.

20   THE COURT:  Okay.  So that is Page 1 of the

21  exhibit.

22   MR. DILLARD:  Yes.

23   THE COURT:  So what was that about 26 of 54?

24   MR. DILLARD:  Down at the bottom.

25   THE COURT:  No.  I see 26, but you said something

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    like 31 of 54.

2         MR. DILLARD:  When we receive it from the court, a

3    copy, it has a designation at the very top that indicated

4    31 of 54.

5         THE COURT:  Well, let's -- I don't care, but this

6    is the chambers copy which doesn't have that on it.  That

7    is okay.  Just so we are on the same page here.  This is

8    Page 1 of the exhibit.

9         MR. DILLARD:  Yes.

10        THE COURT:  Okay.  Go ahead.

11        MR. DILLARD:  So as far as the moving around, the

12   third step is receiving a second user input specifying a

13   nagivation direction relative to the first location in

14   the geographical area.  It goes on to the next step is

15   determining the second location based on the user

16   specified nagivation direction.  And then retrieving from

17   the image source the second image associated with the

18   second location.  So that is basically the part where you

19   can move up and down the streets.

20        THE COURT:  Okay.

21        MR. DILLARD:  I believe also on Page 3 of that

22   brief --

23        THE COURT:  Of the brief not of the appendix?

24        MR. DILLARD:  Yes.  Of the brief.

25        THE COURT:  Okay.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          MR. DILLARD:  -- there is an image of something

 2   called Scout Tool.

 3          THE COURT:  Yes.

 4          MR. DILLARD:  This is Figure 16 of the provisional

 5   application or -- excuse me.  I'm sorry.  I think it is

 6   Figure 16 of the patents, but there, above the image down

 7   at the bottom, there are some buttons that can be pressed

 8   to move the images up the street, down the street, little

 9   bit over to the opposite side.

10          THE COURT:  I'm sorry.  When you are talking about

11   the image, you are talking about the photograph?

12          MR. DILLARD:  Yes, your Honor.  This one.

13          THE COURT:  You got a graphic, something called

14   Scout Tool?

15          MR. DILLARD:  Yes.

16          THE COURT:  And then there is a color, street

17   browser.  We are just looking at Scout Tool right now?

18          MR. DILLARD:  Yes.

19          THE COURT:  Then at the very bottom of Scout Tool,

20   that is what you are referring to the image.

21          MR. DILLARD:  Correct, your Honor.

22          THE COURT:  Then I don't see any buttons.

23          LEFT1:  Above on the right-hand side, there is a

24   little what appears almost to be a cross, north, south,

25   east, west buttons.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  Oh, yes.  I see that.  Those are

 2   buttons?

 3          MR. DILLARD:  Right.  And in that embodiment,

 4   those would have been used to move directionally.

 5          THE COURT:  So you could move west which would be,

 6   assuming this is Colorado Boulevard, this would have been

 7   moving towards -- well, if it was west, if it was Orange

 8   Grove, I guess, then -- well, what happens if you want to

 9   move northwest or something or if you know the street

10   doesn't align northwest.  It isn't aligned north and

11   south.

12          MR. DILLARD:  Well, you could have forward,

13   backward, left and right.

14          THE COURT:  I don't see it here.

15          MR. DILLARD:  Not in this.  That was not the way

16   Scout Tool was prepared.  This was the very initial

17   embodiment that was created in the year 2000.

18          THE COURT:  And these pictures that you have given

19   me here, are these part of the patent application?

20          MR. DILLARD:  The Scout Tool is.

21          THE COURT:  But not the --

22          MR. DILLARD:  Not the street browser.  That was an

23   embodiment of the invention that was up on the Pasadena

24   website in 2001.

25          THE COURT:  And this, just so I understand, this
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    Scout, this was a image that was attached that was

2    included in the patent application?

3         MR. DILLARD:  I believe this would be called a

4    screen shot.

5         THE COURT:  Well, is it a screen shot, whatever it

6    is, but it was an image.

7         MR. DILLARD:  Yes.  But when operative, what could

8    you do?  You could click on something on that map and get

9    the image?

10        MR. DILLARD:  Yes.  You could -- you could enter

11   an address in the small boxes up in the right-hand

12   portion.

13        THE COURT:  220?

14        MR. DILLARD:  Yes.  There we go.

15        THE COURT:  You could pick a location and click on

16   it?

17        MR. DILLARD:  Yes.

18        THE COURT:  That would give you a image of the

19   street?

20        MR. DILLARD:  Yes.

21        THE COURT:  How does it know which side of the

22   street?

23        MR. DILLARD:  There was --

24        THE COURT:  Well, what happens if I am here, and I

25   want to see the other side of the street?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          MR. DILLARD:  There is a direction identifier

 2   which is, I believe, the vehicle in the map is on

 3   one side of the street versus the other.

 4          THE COURT:  I'm sorry.  The vehicle on which map?

 5          MR. DILLARD:  In the map above the image.

 6          THE COURT:  There is a vehicle there?

 7          MR. DILLARD:  I'm sorry.

 8          THE COURT:  I'm sorry.  There is a vehicle on that

 9   map?

10          MR. DILLARD:  I believe that is a vehicle at the

11   intersection.

12          THE COURT:  Of Colorado and --

13          MR. DILLARD:  And is it Fair Oaks maybe?

14          THE COURT:  Whatever that street is.  Yes.

15   Something avenue.  Oh.  Fair Oaks.  Yes, sure.  Fair

16   Oaks.  So that is a little car there at the intersection.

17   I see.  And I am not sure I understood what you said.  I

18   said what if you want to see the opposite side of the

19   street.

20          MR. DILLARD:  I believe you would hit the center

21   button of those four east, west.

22          MR. DILLARD:  Yes.

23          THE COURT:  And the invention, here, was a way of

24   retrieving these images that was particularly economical.

25   Is that what it was?
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1        MR. DILLARD:  Yes, your Honor.  That Scout Tool?

2        THE COURT:  Yes.

3        MR. DILLARD:  The picture is Figure 16 in all of

4   the patents.  It is a little bit bigger in the patents,

5   and that center button says switch view.  So that would

6   be if you were -- if your view was to the north, it would

7   flip you over to the south.  Now, the embodiment whether

8   it be Scout Tool or even the street browser in Pasadena

9   did take side-looking images of the streets, the

10  buildings on the streets.  However, the patents do

11  discuss some alternate embodiments, and, in particular,

12  the provisional application includes a disclosure of --

13  well, I will just read this portion to you.

14        It says, "also sufficient cameras to cover all

15  directions used so as to provide 360 degrees of view,

16  images and synthetic panoramas for the direction of

17  views.  A user control can be provided."

18        Now, that is not something that was done in

19  the street view, not street view, sorry, Scout Tool.

20  However the provisional application has a disclosure of

21  that.  The provisional application is incorporated in its

22  entirety by reference in all of the patents so they

23  contain a disclosure of synthetic 360-degree views as a

24  potential embodiment.

25        THE COURT:  Okay.  Do you want to go ahead hear

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   from opposing counsel.  Do you have anything further to

 2   say on that?  I thought we would go down some steps so I

 3   wasn't sure.

 4            MR. DILLARD:  Well, I think perhaps if we let

 5   Ms. Rao catch up where we are.  Then, we can make it a

 6   little bit more --

 7            THE COURT:  Okay.

 8            MS. RAO:  Good morning, your Honor.

 9                I would like to start by answering your

10   question about what is the claimed invention as described

11   in the patent.  So, before, I would like to hand over

12   with your permission a slide presentation.

13                May I approach the bench, your Honor?  May I

14   approach?

15            THE COURT:  Sure.

16                Thank you.  Opposing counsel have this?

17            MS. RAO:  Yes.

18            THE COURT:  These are the slides.

19            MS. RAO:  Yes.

20            THE COURT:  So we are looking at Slide 3 now.  Do

21   we need the slides -- do we really need the slides?

22            MS. RAO:  I think it would be helpful, your Honor,

23   to understand what the claimed invention is.

24            THE COURT:  But everything is in these folders.

25            MS. RAO:  Whatever works better for you, your
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    Honor.

2          THE COURT:  Usually, that is for the jury, you

3    know, and we all look at pictures.  But if you think -- I

4    guess we have an audience.  I have no problem with that,

5    but I must tell you I am too vain to get bifocals so if I

6    can see this, I can't see that.

7          MS. RAO:  Right.  Let's use the paper copy.

8          THE COURT:  You can go ahead and do that, and then

9    the audience can follow along because we do have the

10   inventors here and others who might be interested.  But I

11   will be looking at the close-up.

12         MS. RAO:  That is why we got those, your Honor.

13         THE COURT:  Okay.  I am with you.  So if I don't

14   look at you, it is because I am looking.

15         MS. RAO:  That is perfectly fine, your Honor.

16         THE COURT:  Okay.  Go ahead.

17         MS. RAO:  So the abstract of the patent gives a

18   broad summary of the invention, and if you look at the

19   abstract, you can think of the invention.

20         THE COURT:  Excuse me.  The abstracts are these

21   things in color that you have here?

22         MS. RAO:  Right.  We took the snippet from the

23   patent, and if you want to look at the snippet we took,

24   it is attached at Rao Exhibit D.  Rao Exhibit D is a copy

25   of the 760 patent, and so we just took the abstract from

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    that.

2           THE COURT:  Let me see, Rao Exhibit D.  You are

3    Rao?

4           MS. RAO:  Yes.

5              It was attached to Google's claim construction

6    brief, opening brief.  It is docket item --

7           THE COURT:  Well, I have the claim construction

8    brief.  Oh.  There we go.  Rao declaration.

9           MS. RAO:  Right.

10          THE COURT:  Okay.  And it was exhibit what?

11          MS. RAO:  D as in David.

12          THE COURT:  Mine only goes to C.  Oh.  It

13   continues.  There we go.  Okay.  No.  That is Lauridsen.

14             Rao only has A, B, C.  This is Document 57-2.

15          MS. RAO:  I will just give you a copy of the

16   patent, your Honor, with your permission.

17          THE COURT:  Okay.  Thank you.

18          MS. RAO:  So we are looking at the abstract of

19   this patent.

20          THE COURT:  Okay.

21          MS. RAO:  And we took the abstract and we

22   color-coded it because it shows the three concepts that

23   are claimed as Vederi's invention.  So there are

24   three pieces to this claimed invention.  The first piece

25   is capturing images along the street, and that is

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   indicated by the text highlighted in yellow in the

2   abstract.  And it talks about a video camera moving along

3   a street recording images of objects along the street,

4   and then the second piece of the claimed invention is

5   forming a vertical flat panorama.

6            THE COURT:  Wait a minute.  There is a little bit

7   more to the yellow part.  It is a camera that moves

8   along.

9            MS. RAO:  Right.

10           THE COURT:  And then there is a GPS receiver that

11  tells the camera where it is?

12           MS. RAO:  That's right.

13           THE COURT:  And then the images are indexed to the

14  GPS location.  I take it the GPS gives you a precise

15  longitude and latitude position?

16           MS. RAO:  Right.

17           THE COURT:  Which I guess, presumably, at some

18  point, is called a street address?

19           MS. RAO:  I am just using the abstract to

20  illustrate the three big concepts that are combined.

21           THE COURT:  So the yellow, the first part is the

22  capturing of images and indexing them.

23           MS. RAO:  Right.

24           THE COURT:  To a specific location.

25           MS. RAO:  Right.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  Okay.  Now, we are onto the second

 2   one which is the green portion.

 3          MS. RAO:  Right.

 4          THE COURT:  Okay.  And what is that.

 5          MS. RAO:  That is creating the vertical flat

 6   panorama, the panoramic image.

 7             Now, I have slides to illustrate each of these

 8   concepts in greater detail as we move through with more

 9   pieces of the specification just to give you the sense of

10   the invention as a whole.

11             So the second piece about creating a vertical

12   flat panorama is described in the abstract, for example,

13   in the language highlighted in green which is the

14   composite images created on a column by column basis by

15   determining which of the acquired images contains the

16   desired pixel column, and extracting pixels associated

17   with the column and stacking the column side-by-side.

18             Now, we will look at that in greater detail

19   with reference to the figures of the patent, but,

20   generally, that describes creating a vertical flat

21   panorama.  And then the third concept that is encompassed

22   in Vederi's invention is the notion of a user nagivation

23   from a user terminal.

24          THE COURT:  Well, that is the part that is totally

25   unreadable.  Black and blue.  Why don't you go ahead and
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    read it to me because I can hardly make it out.

2          MS. RAO:  Perhaps you could use your white copy,

3    your Honor, of the patent I just handed you.  It is on

4    the cover page of that.  It is the first page of the

5    patent, and it is the line.

6          THE COURT:  I see.  So this is -- what you have

7    got here, multi-color, is the same paragraph on the

8    abstract?

9          MS. RAO:  Exactly.  And the abstract is the broad

10   summary of the invention that Vederi drafted, and it is

11   part of the fully integrated written instrument that is

12   the patent that you have been asked to construe.  And at

13   the end of this abstract paragraph, it talks about the

14   composite images being stored in a database with a street

15   name and a range and having, allowing a user to visually

16   navigate the area from a user terminal.

17          And the Scout Tool picture on the side is

18   Figure 16 of the patent which we put on Slide 3 to

19   indicate the graphic user interface that the patent uses

20   to exemplify this user nagivation from a user terminal,

21   and that is the graphic interface that a user would use

22   to enter addresses and navigate the images that you have

23   captured and the panoramas that you have created.

24          Now, we can look at this step by step in more

25   detail.  On Slide 4, we go back to the first element

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    which is the video camera moving along the street

2    recording images of objects along the street and, you

3    know, having a GPS receiver to capture the position of

4    the camera as the image was taken.

5              And in the Vederi patent, in the background

6    section, and that is at Column 1, Lines 38 through 42, it

7    says that the prior art taught --

8          THE COURT:  Excuse me.  Column 1 of what?

9          MS. RAO:  Of the 760 patent I just handed you.

10         THE COURT:  Which is on what page?

11         MS. RAO:  It is the -- it is usually the page

12   right after all the pictures are done.

13         THE COURT:  Okay.  So it is Column 1.

14         MS. RAO:  Right.  And Lines 38 where it starts

15   with "for example."  We have made a snippet of that and

16   put it on the slide.

17         THE COURT:  38 to 42?

18         MS. RAO:  Right.  So the citations in this slide

19   are to the patent column and figures.

20         THE COURT:  Okay.

21         MS. RAO:  So we can just use the slide because it

22   is easier to find information.  The patent says that the

23   prior art teaches the use of a vehicle equipped with a

24   video camera and a GPS to collect image and position data

25   by driving through the location.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1      So what this is saying is the patent admits

2   that this concept of taking images and putting them, you

3   know, capturing images with a GPS location, that concept

4   was known before.  Then, we look at the next concept.  So

5   this is Slide 5.  Looking at Slide 5, it is an example of

6   how the prior art disclosed capturing images along a

7   street.  We have a company called GeoPan that did the

8   same thing.  There are other examples, but we just picked

9   one to show that it was, in fact, out there back in '95.

10      So then we take the second concept which is

11  forming of the vertical flat panorama.  Now, I am at

12  Slide 6.

13      THE COURT:  Okay.

14      MS. RAO:  So, here, what we have is Figure 2 of

15  the patent.  It explains -- it shows how the vertical

16  flat panorama that Vederi described in the patent is

17  arrived at.  If you look at the line in the middle of

18  Figure 2, it is the X axis.  That line represents the

19  point, the path along which images are taken from a

20  moving vehicle or or a moving device of sorts.

21      And at each point, X or Y, a different image

22  is captured of the side of the street.  So the images at

23  the top are the images that are captured from each point

24  X1, X2 and so on as the vehicle is moving along the

25  street.

 1          At the bottom of Figure 2, you have a .44.

 2   .44 is an imaginary point at which Vederi looks at these

 3   images and creates, stitches together this vertical

 4   panorama of these individual frames so the imaginary

 5   point is off the path from which the pictures were taken.

 6   And then you look at the pictures and you figure out

 7   which pixel column to use to stitch the individual image

 8   frames together.

 9          And what the end result would be a panoramic

10   picture like Figure 40 shown there which is the stitching

11   together of the individual image frames by looking at

12   them, off an imaginary point, off the path at which the

13   pictures were taken.

14          THE COURT:  Okay.

15          MS. RAO:  So the concept of taking individual

16   frames and stitching them together into a panorama was

17   also known in the prior art.  Here, on Slide 7, we have

18   an examplar reference which is an article by Dykes from

19   March of 2000 where he takes pictures and shows how they

20   can be stitched together to create a panorama.

21          Then the final concept about -- turning to

22   Slide 9, sorry, Slide 8 -- the final concept about user

23   nagivation from a user terminal and having a graphical

24   user interface to do it, it is important that the patent

25   describes this interface as being something that the end

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    user interacts with, that the end user places requests

 2    into this database and receives information from this

 3    interface.

 4            And if you look at Slide 9, there is the prior

 5    art also had graphical user interfaces to navigate

 6    geographical areas.  For example, there is a company

 7    called GeoPan that had a city tour software that allowed

 8    you to view different locations in Minneapolis with a

 9    graphical user interface.

10            And there is also other references.  One is at

11    Slide 10.  And these are just examplars to illustrate how

12    these concepts were individually known before Vederi's

13    claim mentions it.

14            Now, I would like to address the preamble

15    issue unless the court has any questions on the slides we

16    just saw.

17        THE COURT:  You have explained all the things that

18    the invention is not because it is kind of a prior art,

19    but you didn't tell me what the invention does cover.

20        MS. RAO:  Actually, your Honor.

21        THE COURT:  Or you think it covers nothing?

22        MS. RAO:  We have a defense of invalidity which is

23    to say that the invention is obvious.

24        THE COURT:  But we are not here to decide that

25    today.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1        MS. RAO:  Right.  We are not here to decide that.

2   So what the invention covers is what I have shown you

3   which is these three concepts combined together, put

4   together in these claims.

5        THE COURT:  Okay.

6        MS. RAO:  Now, that is just to clarify one thing.

7   There are four asserted patents in this case by Vederi,

8   and there are 30 asserted claims.  And all of them are

9   method claims.  So they all require a series of actions

10  that must be performed, and these actions relate to the

11  three concepts we discussed.  So the disputes about claim

12  construction go to these asserted claims that cover

13  various permutations and combinations of the concepts,

14  the broad concepts we discussed.  So that is where --

15  that is the broad context for the dispute.

16        Now, with your permission, I would like to

17  turn to the preambles.

18        THE COURT:  Okay.

19        MS. RAO:  So can we have Slide 18, please.

20        So the dispute between the parties on the

21  preambles is that, as Mr. Dillard indicated, Vederi

22  believes that the preambles define the environment in

23  which an accused infringer can act but needn't be

24  performed by the accused infringer.

25        And it is Google's position that the preambles

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    are limitations on the claim in two ways.  And let's turn

 2    to Slide 20.  So of all these 30 asserted claims, there

 3    are only two unique preambles, and those are set forth at

 4    Slide 20 of our presentation.

 5         THE COURT:  And they appear where?

 6         MS. RAO:  They appear everywhere in the claims in

 7    the four patents.

 8         THE COURT:  Well, in the subsection of 760 patent,

 9    where do you find it?

10         MS. RAO:  In the 760 patent you can find it in the

11    first claim.  So if you go to the end of the patent at

12    Column 15.  At the bottom, it says "what is claimed is."

13         THE COURT:  Okay.

14         MS. RAO:  And then "Number 1."

15         THE COURT:  Okay.

16         MS. RAO:  That says "in a system including an

17    image source and a user terminal having a screen and an

18    input device, a method for enabling visual nagivation of

19    a geographical area from a user terminal, a method

20    comprising."

21         THE COURT:  Right.

22         MS. RAO:  Okay.  That is quoted in the top half of

23    Slide 20 as one of the unique preambles of the Vederi

24    asserted claims.

25         THE COURT:  Okay.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    MS. RAO:  There is a slightly different variation

2    of it in other claims, and that is included also in Slide

3    20 which is a method for enabling visual nagivation for

4    geographic area via computer system and so on and so

5    forth.

6          THE COURT:  Okay.

7          MS. RAO:  So if you look at the preambles, it is

8    Google's position that they provide two limitations to

9    these claims:  One, that there must be a user terminal or

10   a computer having a screen, and the second limitation is

11   there must be visual navigation of a geographic area from

12   the user terminal.  That is that an accused infringer

13   must actually perform the method for visual nagivation

14   and from a user terminal and that there must be a user

15   terminal and a display screen that is read in as part of

16   the claimed invention.

17         THE COURT:  Well, you have this phrase, "in a

18   system including."

19              How do you deal with that?

20         MS. RAO:  Well, your Honor --

21         THE COURT:  You are entitled at that point?

22         MS. RAO:  That's right, your Honor, because the

23   claim is to a claimed method.  So there is a system that

24   the claimed method is performed in.  All we are saying is

25   the claims are user centric, not host computer centric

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    meaning that whatever -- we are not disputing that the

2    host computer performs some part of these method steps.

3              All we are saying is the user terminal also

4    must perform something because otherwise the fact that

5    the user terminal and display screen are mentioned is odd

6    whereas the host computer is not even mentioned in the

7    preamble.

8         THE COURT:  Okay.  Well, let me make sure I

9    understand your argument.  Let's look at the 760 patent.

10        MS. RAO:  Right.

11        THE COURT:  If we deleted the part of the sentence

12   before the comma including the comma and capitalized the

13   "a", would your argument disappear?

14        MS. RAO:  Yes, your Honor.  I think what you are

15   saying is if you read these claims --

16        THE COURT:  I am not saying anything.  I am asking

17   a question.  And the answer is yes?

18        MS. RAO:  Yes.

19        THE COURT:  So your argument hinges on having this

20   phrase which starts off "in a system including an image

21   source" be a part of the claim rather than having it

22   simply -- and to do that, it seems to me you have to

23   delete the phrase "in a system," you know, which does not

24   seem to be the most natural reading of the language.

25        MS. RAO:  Well, your Honor, the claims for --

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  I mean, if you wanted to do that, if

 2   you drop the end, that argument is pretty good.

 3          MS. RAO:  But, your Honor, claims are written in a

 4   broader context.  There are many claims here, and what

 5   this is saying is that piece may be setting forth the

 6   environment that you are in a system, but there has to be

 7   somebody that is performing the method.  And all we are

 8   saying is the user terminal which is specifically called

 9   out in the display screen, the rest of the claim doesn't

10   make sense without those words.

11          THE COURT:  Yeah.  I don't buy it.  Okay.

12          MS. RAO:  Okay.

13          THE COURT:  I -- to me, the method starts after

14   the comma.  This sets a -- it says it has to include --

15   it gives a setting, but the claim starts with "a method

16   for enabling visual nagivation."

17          MS. RAO:  Well, I think, your Honor, if that is

18   what you are saying, then, there is no mention of the

19   body of the method claim.  If you look at, for example,

20   Slide 23.

21          THE COURT:  Okay.

22          MS. RAO:  Which uses -- it shows the claim in the

23   context of the body.

24          THE COURT:  Okay.

25          MS. RAO:  Okay.  So you have got receiving a first
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    user input specifying a first location in the

2    geographical area.

3            If under your reasoning, you could eliminate

4    the preamble and just go with the method steps and you

5    would say that is a complete invention.  And it is our

6    position that you can't do that because when you put your

7    hand on the preamble, none of the rest of it makes any

8    sense.  The whole claim is one unified, intimately meshed

9    piece that describes the claimed invention as a whole

10   with the preamble breathes life and meaning into this

11   claim.

12           If I put my hand on that preamble, I don't

13   know what the geographical area they are talking about

14   is.  I don't know what they are talking about when they

15   say displaying an icon.  Who or what, where?  Where is

16   that happening?

17       THE COURT:  That is why they provide context.  But

18   you can provide the context so the rest of the claim

19   makes sense without having actually claims in the

20   context.  So it makes sense to provide the context so you

21   know the starting point.  And probably would have been

22   wise of them to put the outside of what is claimed,

23   probably not the best --

24       MS. RAO:  Right.  Your Honor is relying on cases

25   such as Advanced Software which I have illustrated on

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    Slide 28.

2         THE COURT:  I was actually relying on my common

3    sense reading of it.  I did look at the case.  This is a

4    federal circuit case.  I can never understand federal

5    circuit cases, too complicated.

6         MS. RAO:  Well, your Honor, that case talked about

7    the context.

8         THE COURT:  I mean, they are good.  But I -- I

9    always find them very complicated to follow.

10        MS. RAO:  So, your Honor, in the Advanced Software

11   case where they talk about the context and they talk

12   about parts of the preamble providing context, they are

13   saying that steps that have nothing to do with the

14   claimed invention which is the process for validating a

15   negotiable financial instrument are not part of the

16   claimed invention.

17        They are not saying that the process of

18   validating a negotiable financial instrument is not a

19   limitation on the claims.  So we are saying you can take

20   that, compare that to our claim, and we are not saying

21   that image source is not context of the claim.  All we

22   are saying is the method for navigating and the display

23   screen and user terminal is part of the claim whereas the

24   system piece is the context.

25        So that is exactly what happened in Advanced

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    Software.  They took one piece and said this piece goes

2    to the claimed invention, and, in fact, that is the

3    purpose of the claimed invention.  And that -- I would

4    like to point the court to one particular portion of

5    Advanced Software's reasoning that is particularly

6    pertinent here.

7            And this is at 641 F.3d, 1368 at Page 1375,

8    and, in that case, they explain that although it is true

9    that the preamble language stating the purpose is

10   generally not a limitation -- right -- but they do say

11   that we have to look at the statement of purpose to

12   distinguish between what limitations are essential to the

13   claims invention and what just provide the environment.

14           So what we are saying is the system piece

15   provides the environment, but you have to also look and

16   parse the preamble and pick portions that are part of

17   their claimed invention.  The whole purpose, the whole

18   essence of this Vederi claimed invention is navigating

19   from a user interface.  So if you say that is not a

20   limitation, then it takes out one whole concept they

21   claimed as their invention.

22       THE COURT:  Well, that is what I asked earlier on

23   as to what it is they were actually claiming, and what I

24   understood they are claiming is a way of capturing,

25   storing, retrieving the images that is in a pretty

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    economical way.

2        MS. RAO:  But it is not just that.  It is also

3    displaying, displaying the icon associated with an

4    object.  It is also receiving a user selection of the

5    icon.  It is also receiving a first user input.  That is

6    also part of the claim.

7        THE COURT:  You know, I think it is debatable.

8    You might be right.  I don't see it, but you might be

9    right.

10        MS. RAO:  Now, I just want to point to one more

11    case that is particularly appropriate here.  It is the

12    Pitney Bowes case at Slide 24.

13        THE COURT:  24.  Okay.

14        MS. RAO:  So the claim at issue in Pitney Bowes

15    was a method of producing on a photo receptor an image of

16    generated shapes made up of spots comprising and then

17    talked about directing plurality of beams of light and so

18    on and so forth.  And for that claim, the federal circuit

19    held that the statement in the preamble, the method of

20    producing a photo receptor image was intimately meshed

21    with the ensuing language in the claim and essential.

22        THE COURT:  But you are missing the word "in."

23    And I think I have already given you if the word "in"

24    were missing, it would be quite a different case, but the

25    word "in" is there.  And so if Pitney Bowes had said "in

1    a method of producing."  And I did look at this when I

2    was reading your briefs.

3        MS. RAO:  I see what you are saying, but this is

4    not a claimed system in Vederi's patent.  316, Claim 1

5    says "in a system," but the claimed invention is a

6    method, not the system.  So the system cannot be part of

7    the invention.  That is a fundamental concept of patent

8    law.  You have method claims, and you have system claims.

9    In order to use a method claim, you have to perform each

10   and every step of the method.  Whereas for a system

11   claim, the use of a system claim analysis is completely

12   different.  You can use a system claim without having all

13   the parts of the system be part of the claimed invention,

14   and that is the difference, your Honor.  Because you are

15   pointing to "in a system" including an image source and a

16   user terminal, and you are saying that whole first clause

17   is simply telling you the rest of the preamble doesn't

18   matter.

19       I respectfully submit that that clause about a

20   system has no applicability for a method claim.  It is

21   two different animals in patent law.  So we are trying to

22   construe all the asserted claims or method claims.  So

23   these are action steps in the body of the claim.  I don't

24   know who or what is performing each of the action steps

25   unless I look at the preamble.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          So going back to the preamble language which

2     is what we have, the system piece, I submit, is a red

3     herring because we are talking about method claims, and

4     we have to focus on what is the method, and the method is

5     the method for enabling visual nagivation of a geographic

6     area from a user terminal.  And that is common to all the

7     asserted method claims, and we submit that the who or

8     what performs the method has to be a user terminal and a

9     display screen has to be a part of it.  We are not saying

10     the host computer is not also part of it.  We are simply

11     saying it must also include the user terminal.

12          THE COURT:  I'm sorry.  And why must it?

13          MS. RAO:  Because if you look at the language of

14     the claims, the only device -- so let's skip ahead to

15     Slide 33.  There it is.  There is a bunch of displaying

16     steps that are in each of the asserted claims.  We just

17     compiled them because there are too many claims so we put

18     them all on one slide displaying the map on the screen of

19     the user terminal, displaying an icon outputting the

20     first image onto an image display device.  These are part

21     of the bodies of the asserted claims.  So this wouldn't

22     make any sense unless you also had a display screen and

23     that the user was using.  And just as a matter of

24     computer science, we know --

25          THE COURT:  I'm sorry.  Why can't you have a

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    display?  Obviously, they didn't invent display screens?

2    I mean, they were terminals.  So you have to use prior

3    art.  They didn't --

4         MS. RAO:  Right.

5         THE COURT:  So they have to sort of use stuff that

6    is used before.

7         MS. RAO:  What they are saying is the displaying

8    is occurring by the host computer, by the remote server,

9    and what we are saying is the displaying is occurring by

10   the end user's device, your Honor's laptop or my laptop.

11   And that is because the only device that is controlling

12   the display screen is the end user's computer.

13        THE COURT:  Well, let me ask you this:  If you

14   take the logic of what you say, why doesn't it also claim

15   a terminal screen, a terminal having a screen?  So why

16   wouldn't you read this claim as also including basically

17   a personal computer?

18        MS. RAO:  We are, your Honor.  We are saying the

19   personal computer is the user terminal.

20        THE COURT:  And that is claiming that as part of

21   the invention, a user terminal?

22        MS. RAO:  Right.  And so we are saying, and the

23   end user's computer where you sit down and enter the

24   address and then you get the image back and it shows up

25   on your screen, that is part of the claimed method.  That

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  terminal is performing the displaying step of the claimed

2  method.

3         The only thing that is controlling the display

4  screen is the computer sitting on the -- it is not the

5  host computer.  And maybe I would use an everyday example

6  to illustrate this point.  We all surf the Internet, and

7  we have gone on websites where we want to, you know,

8  enter a website and there is a video or something and the

9  screen shows up with a black box.  I don't know if you

10  have experienced that, but sometimes you don't get any

11  data on the screen.

12      THE COURT:  Okay.

13      MS. RAO:  The reason for that is because -- and

14  the computer might say you need Adobe Flash Player to

15  view this content, and then the user has to download that

16  software.  So what that is telling you is the host

17  terminal is sending data to the user's computer, and it

18  is the user's computer, then, with the browser and the

19  operating system that has to then take that data and

20  display it on the screen, that the host computer can't

21  control the displaying function and that the displaying

22  function is only performed by the end user.

23         And this makes sense in the context of the

24  claims because like I said displaying -- they talk about

25  displaying an icon on the screen, and the screen is at

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

 1  the user's computer at the user terminal.  That is just a

 2  user computer, and we know that from the patent.  I will

 3  show you where the patent talks about what is a user

 4  terminal.  And that is at Column 12.

 5        THE COURT:  Okay.

 6        MS. RAO:  At the top, Line 3.  It says the remote

 7  user terminals may include personal computers -- so

 8  personal computers are what they are talking about, set

 9  top boxes and so on and so forth.  And then they say the

10  visual component of each user terminal preferably

11  includes all sorts of screens.  So what they are talking

12  about is the end user's computer and the screen they are

13  talking about is the screen attached to that computer.

14  That is right there in the patent.

15        THE COURT:  I don't see this as being anymore than

16  describing the context in which the claimed invention or

17  the invention can be useful, and you have to set the

18  invention in context to understand utility.  They have to

19  show utility -- right -- to get a patent without

20  explaining what it is that the patent does.

21        MS. RAO:  Right.  My only point in showing you

22  Column 12 was to show you what the patent means by user

23  terminal.  Our basis for saying that the user terminal

24  and the screen are limitations is because they appear in

25  the preamble of the claim.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  Well, you make a good argument.
 2   Nevertheless, that is my ruling on the preamble.
 3          Do you want to move on to another issue?
 4          MS. RAO:  Well, I don't know if you have addressed
 5   the display steps and the receiving step?
 6          MR. DILLARD:  Not yet.
 7          MS. RAO:  So I will address them after.
 8          THE COURT:  Okay.  Okay.  Go back to Mr. Dillard.
 9          MR. DILLARD:  Yes, your Honor.
10          THE COURT:  Okay.  What is the next issue?
11          MR. DILLARD:  We talked a little bit about it.
12   Yes.
13          THE COURT:  This is a question of whether or not
14   the steps have been performed by the user.
15          MR. DILLARD:  Yes, your Honor.
16          THE COURT:  This seems a little bit more of the
17   same in the preamble issue, doesn't it?
18          MR. DILLARD:  It does follow on pretty directly
19   with the preamble.  If I could make a couple of very
20   brief comments regarding the discussion about the
21   abstract and so forth.  The abstract is different than
22   the claims.  You don't infringe an abstract.  You don't
23   infringe the specification, you infringe the claims.  In
24   this case, there is a lot of different ways that
25   one could claim aspects of the invention.  Certainly, one
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    could claim it as an interactive process, but, of course,

2    that has problems for the claiming entity because you

3    immediately get into a situation of joint infringement

4    and so, you know, the federal circuit has provided at

5    least some guidance in, you know, basically telling claim

6    drafters to try and draft claims so that only a single

7    entity would infringe like in this case Scimetic claims,

8    and that is what the claim drafters have attempted to do

9    here.

10           With respect to receiving first user input, we

11   talked about that, and certainly the processor has to

12   receive an input in order to find and retrieve the image

13   and send it back.  And there is no question that the

14   processor sends it back, the image for display on a user

15   terminal.  The real question is who is responsible or who

16   caused that or which entity causes that display, and it

17   would be the entity that controls the processor.

18           When you use a system like this, a user that

19   wants to see images would type in an address or do

20   something, that would be sent to the processor, the host

21   computer, and at that point the user does nothing.  All

22   of a sudden on his screen pops up an image, perhaps an

23   image of a map also, perhaps icons.  He does nothing to

24   do that.  So who is responsible for displaying that

25   image?  It would be the processor.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1                And so it is our view that whether the

 2     language is displaying an icon or invoking the display of

 3     an icon which is basically causing the display of an icon

 4     or outputting an image for display.  All of those are a

 5     group of steps that Ms. Rao had listed in the Power Point

 6     are all the responsibility and caused by the processor.

 7     The user just sits back and gets that information

 8     displayed for him or her and then can, you know, click on

 9     an icon or do something else to provide another request

10     or signal that goes back to the processor.

11                So the claims are -- have been drafted not to

12     be an interactive process as claimed, but to be those

13     steps taken by the entity that controls the processor,

14     and I think that is where we differ from Google's

15     position.  They say that it is the user that is

16     controlling the display.  I don't see how that argument

17     flies.  Again, the user just inputs a request and then

18     sits back waiting for the display.

19                And that is -- that would be our second group

20     of issues for claim construction, so if we want to go

21     back to taking one issue at a time, I think that is our

22     thoughts.

23          THE COURT:  Where in the patent is this language?

24     Part of the process is having to read this stuff in

25     context.  The case law says you are supposed to use
```

1    common sense and so on, and then it is tougher to see it

2    in context.

3           Let's take the phrase "receiving a user

4    specified first input location."  Where is that exactly.

5           MR. DILLARD:  Do you have the --

6           THE COURT:  I have the actual patent here.

7           MR. DILLARD:  All right.  So this would be the 760

8    patent?

9           THE COURT:  That is the one we are looking at.

10          MR. DILLARD:  At Column 15.

11          THE COURT:  Okay.

12          MR. DILLARD:  Down at the bottom, there is

13   numbered paragraphs and Claim 1, after the preamble,

14   where it finishes "a method comprising" and then the

15   first step is receiving a first user input specifying a

16   first location in a geographical area.  It is Google's

17   contention that that is something that the user terminal

18   does, not the processor.

19          THE COURT:  So their view is that the user input

20   is part of the claim whereas your view is the user input

21   is external to the claim, that you start with the user

22   inputs and then the claim is everything that processes

23   after that?

24          MR. DILLARD:  Yes.  So the claim itself does not

25   require, for example, the step of a user inputting a

```
 1    signal or inputting a first user input.  The claim starts

 2    with receiving that.  And the -- whether it is received

 3    and forwarded by the user terminal is really irrelevant

 4    as long as, according to the claim, the processor, the --

 5    the thing that will be retrieving the images receives

 6    that signal.

 7        THE COURT:  Well, I think what opposing counsel

 8    would be saying is but that is the first step of the

 9    process and the method.  You have to start with a user

10    input.

11        MR. DILLARD:  Well, okay.  For the interactive

12    process, that would be true, but you are allowed to claim

13    only those steps that one entity performs.  See, that is

14    kind of the tricky thing.  If you are actually navigating

15    down the street, it would be interactive between a user

16    and the host computer processor, asking to move down the

17    street, asking for new images and so forth.  That would

18    include actions by both the user as well as the host

19    computer.

20            But, here, we are isolating those steps that

21    are performed by the host computer, and that is the

22    claimed method.  Otherwise, no entity, no single entity

23    could ever be held to infringe.  This is -- it is a

24    problem with interactive processes, but this is the

25    mechanism that the federal circuit has told us that we
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    need to use in order to claim those steps that are

 2    performed by just a single entity.

 3           THE COURT:  Okay.

 4           MR. DILLARD:  Your Honor, if I may, just a quick

 5    passage from Google's responsive brief.  At Page 10,

 6    Line 17, Google states "if Vederi wished to claim an

 7    action by the host computer instead of," quote,

 8    "receiving a first user input, Vederi could have claimed

 9    receiving from the user terminal a first user input."

10           Okay.  Now, the claimed language doesn't

11    actually say who the first user input has to come from.

12    So forwarding first user input is still being received by

13    the host computer.  Moreover, what is significant here is

14    that the signal that is being sent by the user terminal

15    is still -- and Google acknowledged it -- is still the

16    first user input.

17           I mean, in a system like this, the processor

18    can only receive a signal and a user input from the user

19    terminal.  Just, I don't see how you can get around that.

20           THE COURT:  Okay.

21           MS. RAO:  I would like to start with Slide 37,

22    your Honor.

23           THE COURT:  37.  Okay.

24           MS. RAO:  I would like to address two points that

25    Mr. Dillard just made.  It says the patents did not claim
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    an interactive process.  Well, if we look at the 316

2    patent, Claim 1, at the bottom, it says, after we are

3    talking about receiving a user input and retrieving the

4    images, it goes on to say displaying an icon associated

5    with an object in the geographic area and then receiving

6    a user selection of the icon and then identifying a

7    second location based on the user selection.

8            Your Honor, every claim is like this.  There

9    is an interaction with the user.  When your Honor was

10   asking questions earlier about the embodiment disclosed

11   in the patent about how you look on one side of the

12   street or the other, the user has to provide the input of

13   which side of the street to look at.  The user is the

14   one providing that input, and that concept is embodied in

15   the claims.

16       THE COURT:  Well, but you don't have to claim that

17   is part of the process.  I mean, they might have done it

18   anyway, but you could say, look, you have got a process

19   where you have user input, we don't claim that part of

20   it, but we claim the storage and retrieval system.

21       MS. RAO:  We are not disputing that, in theory,

22   they could have written their claims to be performed

23   entirely on a host computer, but that is not what they

24   actually did.  And what we are saying is the claim

25   language that we are dealing with here and this

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    displaying steps and the receiving steps shows you that

2    it is interactive with the user.

3         THE COURT:  Okay.  Well, I heard you say something

4    more than that.  I may have misunderstood.  But what I

5    thought you were saying was that it has to, there is

6    something inherent about the process that requires

7    interaction with the user.  It is not.  You know, you

8    could describe the process and not claim that part of the

9    process.

10        MS. RAO:  In theory, yes, but not in reality.

11        THE COURT:  Well, that is the question we have to

12   decide.  There is nothing improbable or inherently

13   impossible about, say, we only claim --

14        RIGHT1:  I agree with your Honor that it is

15   possible, and, in fact, that is what the federal circuit

16   says you can draft claims any way, and they should know

17   because their firm drafted these claims.

18             But I want to illustrate that in these patents

19   we are dealing with they did have claims that aren't, for

20   example, 316, Claim 2, that talks about the host

21   computer.  And when they are claiming actions by the host

22   computer, they talk about the image source residing at a

23   remote site and receiving a request via communications

24   network and then talk about transmitting the

25   corresponding image to the user terminal via the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   communications network.

2           So when they were trying to talk about actions

3   taken by the host computer, they were very specific in

4   requiring a communication between the host computer and

5   the user terminal. And this language, there is no

6   mention of the host computer in the claims but there is

7   in other claims. So, logically, in light of also the

8   fact that the only device that is controlling the display

9   screen and the only device that is receiving the user

10  input is the end user computer, one might infer that that

11  is certainly part of the claimed process.

12          THE COURT: Well, I am not sure how you phrase

13  this. You said this is theoretically possible, but they

14  didn't do it.

15          MS. RAO: They showed you how they could do it.

16          THE COURT: I listened to you talk. I didn't

17  interrupt you.

18          MS. RAO: I am so sorry.

19          THE COURT: So cutting in while I am talking is

20  not just rude it is not helpful because I am still trying

21  to get my thought out, and, first of all, you are not

22  going to hear what I am concerned about because you are

23  talking. You stopped me from talking. All right. So

24  you are never going to hear what it is that I really want

25  to hear. So if you want to talk pointlessly, you can go

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   ahead, interrupt me as much as you want, but you are not
 2   going to serve your client.  We understand each other?
 3          MS. RAO:  I apologize, your Honor.
 4          THE COURT:  Okay.  One at a time, if for no other
 5   reason, we have a court reporter present who can't type
 6   when two people speak at the same time.  Okay.  Aside
 7   from just ordinary manners.
 8          MS. RAO:  I apologize, your Honor.
 9          THE COURT:  Okay.  Now, I had a thought, and I
10   lost it when you talked.  So I will try to retrieve it.
11   So if you can just be silent for a second so I can gather
12   my thoughts and try to find my place.  Okay.  And then
13   listen.  Okay.  Listen.  You are not going to help your
14   client by trying to outsmart me, trying to guess what I
15   am going to say before I finish what I am saying.  That
16   is not going to help you.  It is not going to help your
17   client okay.  Silence.
18              Yes?
19          (Pause in proceedings.)
20          THE COURT:  Now, you said that theoretically it
21   would be possible to draft these claims so as to limit
22   the claims to what happened in the server, but I am
23   looking at this language having a hard time imagining how
24   this could be done without making some reference to
25   the -- how could this be done?  How would you redraft
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    these claims to avoid this problem?

 2         MS. RAO:  So may I?

 3         THE COURT:  Yes.

 4         MS. RAO:  So you might put in the preamble that

 5    you have a system where the processor resides remotely on

 6    a remote site.  Okay.

 7         THE COURT:  Okay.

 8         MS. RAO:  And then you might say receiving at the

 9    remote server a first user input specifying a location of

10    a geographic area.  Second element is fine.

11         THE COURT:  Excuse me.  I am lost.  So you would

12    take this phrase that receiving a first user input

13    specifying a first location of a geographic area, and you

14    would move that to the preamble?

15         MS. RAO:  No, your Honor.  I would just add to

16    that receiving at the remote computer a first user input.

17         THE COURT:  I just want to make sure I understand

18    what you are saying.  So we are now redrafting this claim

19    to avoid what you are saying is the problem here.  And

20    what you would do is actually add language to what is

21    there.

22         MS. RAO:  Right.  Receiving at the remote site,

23    and in the displaying, I would say --

24         THE COURT:  Hold on.  Let me just process that.

25    Okay.  So you would have receiving at the server.  I
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    don't want to change your words.  I just want to make

2    sure I understand what you are saying at the processor.

3    I have a problem talking about the processor because

4    there are processors in the terminal as well as at the

5    server; right?  There is a processor in both places.  So

6    you would say receiving at the server processor.

7         MS. RAO:  You don't have to use the word

8    processor.  You just have to use words that the patent

9    uses to describe the remote site.  So you could use

10   remote site.  You could say host computer, words that are

11   used in the patent.

12        THE COURT:  That is fine.  Just hold on.  So you

13   would add receiving at the host computer first user

14   input.

15        MS. RAO:  Right.

16        THE COURT:  Specifying a first location geographic

17   area.  You think that would solve the problem?

18        MS. RAO:  Well, that would be part of the

19   solution.

20        THE COURT:  As far as that language is concerned.

21        MS. RAO:  As far as that limitation is concerned.

22        THE COURT:  Why isn't that implicit it, and how

23   does that really help?  It says receiving, you have to --

24   there is no such thing as receiving in the abstract.

25   Receiving connotes a location, and I can't imagine where

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    else you would be receiving.  So why isn't the language

2    already there?

3         MS. RAO:  Because you are receiving at the user's

4    computer.  That is where you are receiving the address

5    where you want to go to.

6         THE COURT:  I have a hard time with that.

7    Receiving suggests something has been sent, and I don't

8    know if you are talking about the user's terminal.  Where

9    would something be sent from?

10        MS. RAO:  It is sent from the user's keyboard or

11   the mouse click to the user's device.

12        THE COURT:  That is pretty strained.

13        MS. RAO:  That is actually the words that the

14   patent uses to describe the invention when it talks about

15   receiving.  It is talking about receiving, for example,

16   if you turn to Slide 32.

17        THE COURT:  Okay.

18        MS. RAO:  So when the patent describes actions

19   that are performed providing the location, it is the user

20   who is entering the address and entering the -- placing

21   the inquiry essentially for the location for the image

22   that is being requested.

23        THE COURT:  It uses place and enter which is not

24   the converse of receive.  I would think that the converse

25   of receive is send.  And when I think of send, I think of

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    hitting the enter button to return, actually sending.

2         MS. RAO:  Right.  But that is also done at the

3    user's computer.

4         THE COURT:  Right.  But if you go back to the

5    language, we are talking about receiving.

6         MS. RAO:  Right.

7         THE COURT:  So I say, okay, receiving, you said

8    well, so long as it is receiving at the server, it is

9    fine, but this must have been receiving at the terminal.

10   But I don't see it.  It seems to me that receiving

11   connotes receiving at the server because it has to have

12   been sent from somewhere, and the sending as opposed to

13   entering, send or what was the other phrase used here,

14   placed and inquiries or entering.  Certainly, entering is

15   what you think about to key in, and I would see entering

16   as being done with the keyboard.  But, sending, I don't

17   think -- I think sending is done by the user terminal of

18   the PC or whatever it is, the terminal.  So I think

19   receiving here implicitly means receiving at the server.

20        Now, let's go down to the next thing you have,

21   the displaying an icon.  What do you make of that?

22        MS. RAO:  I would say that the remote computer,

23   the host server, whatever you call it, cannot control the

24   end user's computer and make that display happen.  The

25   display is under control of the processor as you pointed

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   out that resides on the computer, the operating system of

2   the computer has to act to cause something to display.

3   There has to be the right -- the user has to have the

4   right software and has to -- and the user's computer

5   controls the display function on the user's computer

6   display screen.

7        THE COURT:  So your view is the display has to

8   happen on the user's terminal?

9        MS. RAO:  That's right.

10       THE COURT:  Okay.  I understand that.  I follow

11  that.

12            Okay.  Anything else here on this page?

13       MS. RAO:  Not on this, your Honor.

14       THE COURT:  Okay.  Mr. Dillard, what do you say

15  about display?

16       MR. DILLARD:  Yes.  Thank you, your Honor.  I

17  would agree that the display has to occur at the user

18  terminal, but the entity or the thing that causes the

19  display is the server.  It sends a signal for display.

20  The user does nothing -- this is the user, not the user

21  terminal.  The user does nothing to cause the display

22  other than to make the request that goes to the server.

23  The server picks out the appropriate images, sends them

24  back for display.  And so I think the real inquiry should

25  be, you know, what entity is responsible for the display,

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   not what piece of equipment actually displays.  We were

 2   displaying as an action item.

 3        THE COURT:  I see.

 4        MR. DILLARD:  Or causing the display of.  I think

 5   that is consistent with the language of other claims that

 6   talk about invoking a display.

 7        THE COURT:  Language is such difficult stuff,

 8   isn't it.

 9        MR. DILLARD:  It is.  Especially when you get

10   lawyers involved.

11        THE COURT:  Okay.

12        MR. DILLARD:  Your Honor, I also think that that

13   is very consistent with the description portion of the

14   patent.  There is a -- well, it is just what I said in

15   the 760 patent, looks like Column 12, it says the

16   retrieved data is then transmitted to requesting remote

17   user terminal for display thereon.

18             So there is no description of anything

19   controlling the display other than the server or a host

20   computer.

21        THE COURT:  Okay.

22        MR. DILLARD:  Thank you.

23        THE COURT:  Well, I am persuaded that the claims

24   ought to be construed as Vederi suggests, that work is

25   done by the server and the user's input is necessary by
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    way of initiating the process, but it is not part of the
 2    claim process.  So I don't know where that gets us.  I
 3    think this gets us down to arbitrary address.
 4              Why don't we take a break now for lunch, and
 5    you can all digest what I said.  And we will see where we
 6    go from there.  Okay.  So, essentially, the first
 7    three issues that I have seen laid out, I have ruled in
 8    favor of the plaintiff.
 9         MR. DILLARD:  Thank you, your Honor.
10         THE COURT:  Okay.  We will take an hour for lunch.
11    Be back at 1:30.
12         MR. DILLARD:  Yes, your Honor.
13         (Luncheon recess from 12:24 to 1:30.)
14         THE COURT:  Okay.  Counsel ready to proceed?
15         MR. DILLARD:  Thank you, your Honor.  Before we
16    broke, I believe you indicated the next issue up was
17    arbitrary address.
18         THE COURT:  I think that was next in line; right?
19         MR. DILLARD:  That's right.
20         THE COURT:  Okay.  I must say I focused less on
21    these remaining issues so maybe you can --
22         MR. DILLARD:  This, we are proposing a
23    construction that will read, any potential address in the
24    geographic area not preselected or constrained by the
25    system.  Google's is an address chosen by the user.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              We believe that the difference is really that

 2    an address chosen by the user could be an address from a

 3    list of addresses that are available.  Could be, say, you

 4    only have 10 addresses, and you can select one of those

 5    10 addresses.  And that is a possibility under their

 6    construction.  Under our construction, it would cover the

 7    situation where you have or you can access addresses that

 8    are or that have not been assigned.

 9              So, in other words, if you take, like, my

10    office at 350 Colorado, my office, if there was another

11    office down at the other end of the block, there would

12    only be two addresses for that list or for that block,

13    but under the system that is described in the patent,

14    one could plug in an address that does not actually exist

15    in the post office database, and pull up an image that

16    would correspond to the location of that address if it

17    had been assigned.  Does that make sense?

18         THE COURT:  Where does this appear in the patent?

19         MR. DILLARD:  This is, for example, in the 316

20    patent, Claim 20.

21         THE COURT:  I have 760 patent.

22         MR. DILLARD:  It does not appear in the 760

23    patent.

24         THE COURT:  It does not.  Okay.

25         MR. DILLARD:  If you want to take our opening
```

1    brief.

2         THE COURT:  Yes.  I have your copy here.

3         MR. DILLARD:  Again, if we look at Exhibit A which

4    has all of the asserted claims.

5         THE COURT:  Okay.

6         MR. DILLARD:  And we turn to -- it would be Page

7    29, down at the lower right-hand.

8         THE COURT:  Okay.

9         MR. DILLARD:  And so we are looking at Claim 20.

10        THE COURT:  Okay.

11        MR. DILLARD:  Where the first location specified

12   by the first user input is an arbitrary address entered

13   by the first user input.

14             And, then, this is to capture this ability to

15   store and retrieve images that don't have assigned

16   addresses.  In other words, not a

17   one-to-one correspondence in the database.

18        THE COURT:  So by arbitrary address, you mean an

19   address that is not actually assigned by the post office.

20        MR. DILLARD:  It would include addresses, that is

21   any of addresses including those that are not assigned.

22        THE COURT:  And what difference does this make in

23   terms of the breadth of the patent?

24        MR. DILLARD:  The importance of this is that there

25   are -- there is prior art that has, for example, like a

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  drop-down list of addresses that a user can select.  That

2  would be whatever is assigned, for example, by the post

3  office or whoever assigns addresses.  This claim captures

4  the fact that under the Vederi system you could have a

5  larger database including unassigned addresses that

6  one could request.

7        THE COURT:  Okay.  All right.  Shall we hear from

8  Google?

9        MR. HARNETT:  Good afternoon, your Honor.  Chris

10  Harnett.  I will be arguing this limitation.

11       THE COURT:  Yes, Mr. Harnett.  Yes.

12       MR. HARNETT:  Yes, your Honor.  The problem we

13  submit with Vederi's construction of arbitrary address

14  comes from a fundamental principle of claim construction,

15  and that is that a patent claim is in the nature of a

16  contract between the inventor and the patent office, as

17  part of the right to exclude, the patentee has to tell

18  the public exactly what the metes and bounds of the

19  invention are.

20             In the first place, a judge such as yourself

21  has to look to determine what the meaning of a claim is,

22  the claim language itself.  It serves a public notice

23  function.  So a member of the public deciding whether or

24  not I can invest in a product, I can bring something to

25  market, whether I am constrained by an existing property

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    right to build something, to sell something, I look first

2    to the language of the claims and say am I free to do

3    this.

4           And often times when one finds himself in a

5    patent infringement litigation, a patentee will attempt

6    to rewrite the claims effectively. They are dissatisfied

7    with the words of the claims that actually were

8    prosecuted with the patent office and actually issued and

9    attempt to rewrite them in such a way to include

10   extraneous limitations in some instances and rewrite them

11   in some instances to eliminate limitations that are

12   really there.

13          It is a game of if I want to make this, I want

14   to make it broader for purposes of infringement, and I

15   want to make it narrower for purposes of validity. And I

16   think what we see right here is an example of trying to

17   include extraneous verbiage within the claim language

18   specifically almost by admission right here to exclude

19   some prior art. These words "not preselected or

20   constrained by the system" are not in the patent.

21          THE COURT: Excuse me. We were looking at

22   arbitrary.

23          MR. HARNETT: Arbitrary address.

24          THE COURT: And when you say these words.

25          MR. HARNETT: The words of Vederi's proposed

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    construction.  Vederi's proposed construction is any

2    potential address in the geographic area, not --

3         THE COURT:  I'm sorry.  You may go ahead.  I just

4    wanted to know where you got those words.

5         MR. HARNETT:  Yes.

6         THE COURT:  I got it now.

7         MR. HARNETT:  Not preselected or constrained by

8    the system.  Those words aren't in the claim.  That is

9    something Vederi is now, after the fact, adding to the

10   claim in an effort to avoid prior art.  These words

11   existed in the English language at the time the

12   prosecution was being done.  If Vederi wanted to claim

13   this as their invention, they were free to present this

14   to the patent office.  But they didn't.

15         And when you look at Google's proposed

16   construction, address chosen by the user, it is

17   consistent with the public notice of the claims, it is

18   consistent with the plain language that the words of the

19   inventor chose to define the metes and bounds of his

20   invention.  And it is also completely consistent with the

21   teaching of the specification.

22         If your Honor looks at Slide 86.

23         THE COURT:  This is in your book here.

24         MR. HARNETT:  This is the claim language itself.

25   The method -- I will wait until you catch up, but it is

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    Slide 86 in our binder, your Honor.

 2           THE COURT:  All right.  This is the same language

 3    up here as in Exhibit A, Page 29.  I'm sorry.  Yes,

 4    Exhibit A, to Vederi's brief.

 5           MR. HARNETT:  It is the claim, part of the claim

 6    language.

 7           THE COURT:  Okay.

 8           MR. HARNETT:  And that is the first stop on the

 9    intrinsic evidence that a court looks at when construing

10    the claims, and we look at the language itself, the first

11    user input.  That is what the user of the computer

12    sitting in his or her house inputs via the keyboard or

13    the mouse, is an arbitrary address entered by the first

14    user input which is the PC sitting on their desk and the

15    arbitrary address specified in the information it selects

16    from a group, for example, street name, city, state, zip

17    code.

18                  So the user, by the plain words of the claim,

19    sits there at his or her computer, mouse, keyboard,

20    however they do it, types in 31 Main Street or hits the

21    drop-down menu and selects Main Street, 31, now, zip

22    code, or however they do it, it doesn't matter.  It is

23    not limited in the claim language how the user does it.

24    All that matters is that it is an arbitrary address

25    chosen by the user.  It is an address chosen by the user.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    It does not exclude drop downs.  It does not mandate any

 2    particular way of doing it.  Just simple.  Choose any

 3    one of these street names, city, whatever.  It is the

 4    plain language of the claim.

 5          THE COURT:  What work do you think the word

 6    arbitrary does there under your construction?  It seems

 7    to me we get to your construction if we delete the word

 8    arbitrary; right?

 9          MR. HARNETT:  Yes.

10          THE COURT:  And so the question is what do I do

11    with the word arbitrary?  What work does it do?  It may

12    not do the work that they --

13          MR. HARNETT:  No.

14          THE COURT:  You must have gotten it from Ms. Rao.

15    Listen.  Don't talk.

16             It may not do the work that they claim, but it

17    has got to do something.  It may or may not, but it has

18    got to do some work.  I mean it is a word.  It is a

19    limitation.  So what do you think it does?

20          MR. HARNETT:  The word "arbitrary address" in the

21    context of the entire claim says arbitrary address

22    specifying information from a group consisting of the

23    following:  It is not like you are limited to

24    one address.  It is not like you are limited only to zip

25    codes.  It is not like you are limited only to a handful
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    of preselected addresses necessarily.  It means that the

2    user can pick what the user wants to pick.

3              That is what arbitrary means.

4         THE COURT:  I thought that is what they were

5    arguing.

6         MR. HARNETT:  No.

7         THE COURT:  I thought that was what Vederi was

8    arguing.

9         MR. HARNETT:  No.  Vederi is arguing that,

10   necessarily, and it is -- they are arguing that it

11   necessarily excludes drop-down menus, and it does not.

12   There is nothing in the specification that says it

13   excludes drop-down menus.  There is nothing in the plain

14   language of the claim that says it excludes drop-down

15   menus.

16             It just says pick an address.  Now, our

17   proposed "an address chosen by the user" doesn't exclude

18   what Vederi says it excludes.  Vederi says somehow their

19   construction is important because it allows them to

20   select an address that doesn't exist.  Nothing would

21   preclude us from that construction either.  Drop-down

22   menu, you could pick, you know, tens, ones, Main Street,

23   Oak Street, whatever, city, state.  You could pick a

24   number of a street that does not exist, and the same

25   thing would happen.  You would get whatever the system

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  would show.

2       There is nothing in the words of the claim or

3  anywhere else in the intrinsic evidence that necessarily

4  excludes drop-down menus.  It is a simple goal directed

5  construction, I would submit, of Vederi's point.  They

6  are trying to avoid a piece of prior art that teaches

7  drop-down menus.  That is not the point of claim

8  construction.

9       THE COURT:  I don't think I made myself clear.  So

10  let me ask the question one more time, and let me see if

11  I can get you to answer the question I am asking, not

12  something else.  Okay.  Okay.  What -- and the way I

13  would like you to answer is by giving me an A and a B.

14  Okay.  What construction is possible with the word

15  arbitrary or without the word arbitrary, that it is

16  possible with the word arbitrary?  What work does the

17  word arbitrary do on the construction?  Give me a case

18  that would be covered with or without arbitrary or vice

19  versa.  Okay.  So that is what I want to hear.  I don't

20  want to hear any of that stuff.  If you have an answer.

21  If you don't, you want to think about it, that is okay.

22       MR. HARNETT:  Give me a second.

23       THE COURT:  Absolutely.  Silence is great.

24       (Pause in proceedings.)

25       MR. HARNETT:  I would submit, your Honor, that the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   word arbitrary allows for the possibility of the entry of

2   any numbers, any set of letters, any set of street

3   addresses, whatever.

4           If it was not arbitrary, it would have a

5   necessarily limited universe of things you could enter.

6   A drop-down menu does not do that.  You could still type

7   in any 10 digit, any single digit, any thousand digit.

8   It is not -- the word arbitrary means that you, the user

9   are free to choose what the user wants.

10          Not arbitrary means the user is not free to

11  chose what the user wants.  That is how I would answer

12  your Honor's question.  And I think under our

13  construction --

14      THE COURT:  So in terms of the A and B that I

15  asked for, let me see if I can understand correctly.

16  Mr. Dillard gave as an example, I forgot what his address

17  was, 350 Colorado, and then he said there is another

18  building 370 Colorado but maybe 360 is not assigned, may

19  or may not be, but let's assume it is not assigned by the

20  post office and does not exist.

21          And, under your construction, I take it you

22  are saying if the word arbitrary were absent, you could

23  only get a positive response by typing in 350 or 370

24  whereas if you add the word arbitrary you could get a

25  response by typing 350, 351, 352, 360.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              Is that what you are saying?

 2         MR. HARNETT:  No.  That is not what I am saying.

 3         THE COURT:  Because that is what he was saying.

 4    So how is your answer different?

 5         MR. HARNETT:  My answer is different in that,

 6    under my construction, a user can type in by any way he

 7    or she wants, any address that he or she wants.  Whether

 8    it exists or not, it will come up.

 9         THE COURT:  Can we exclude the he or she?

10         MR. HARNETT:  The user can type in whatever

11    address, number, click anything, and if it corresponds to

12    a post office address, the post office address will come

13    up.  If it corresponds to an empty lot, the empty lot

14    will come up.  That is what we submit arbitrary means.

15    The user has the freedom to enter in by whatever way,

16    mouse click, keyboard, anything, drop-down menu, an

17    address.  That is what arbitrary means.

18         THE COURT:  You know, I am not understanding how

19    your construction differs from Vederi's.  I am just

20    completely baffled at this point.  I am at a total loss.

21         MR. HARNETT:  If I may try one more time to

22    explain.

23         THE COURT:  What he said is if there is no address

24    between 350 and 370 and you type in the address, it will

25    come up with a picture of something in between.  And you
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    say the answer to that is?

2          MR. HARNETT:  Under my construction, that works as

3    well, but my construction does not include the extraneous

4    verbage in the claim that would eliminate something like

5    a drop-down menu simply for the purpose of avoiding a

6    prior art defense.

7          I submit that the extraneous language that

8    Mr. Dillard is trying to put in the claim doesn't belong

9    there.  We don't reach a different end result about the

10   empty lot.  That is what I am trying to say.  We don't

11   reach a different result.  That is a nonissue.  We both

12   get to that result.

13         The difference is the extraneous language here

14   is simply an effort to exclude drop-down menus, and there

15   is no justification for that.  We both get to the same

16   result about empty lots.  We get to a different result is

17   whether or not the user has to type in or click in by way

18   of an empty field or a drop down menu.  That is where we

19   differ.  Everything else, I think we agree on except

20   perhaps principles of claim construction where you are

21   not supposed to add extraneous verbiage to a claim.

22         THE COURT:  Okay, but let's leave drop-down menus

23   out of the discussion for the time being.  Let's just not

24   talk about them.  We will get to them in a minute.  But

25   let me just deal with the filling in the address

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   question.  Filling in the address question, you and he

2   are in agreement?

3          MR. HARNETT:  I believe so.

4          THE COURT:  I don't want to put words in your

5   mouth.  If according to what I assume him to say is you

6   type in 360 and there is no 360 number there because it

7   is an empty lot or because it is a big building, 350, and

8   just takes up half a block or something, if you type it

9   in, it will come up with a picture of where 360 would be

10  or something of that sort.  That is what I think he said

11  and what I think you are saying.

12         MR. HARNETT:  I don't dispute that.

13         THE COURT:  So on that much, you agree.

14             Now, let's not talk about the drop-down menus.

15  He did mention something about the drop-down menus, but I

16  thought it was just sort of by way of example.  Give me

17  your view of what difference there is as far as drop-down

18  menus are concerned.  How would it work?  I mean,

19  drop-down menus have certain number of defined choices.

20  It doesn't have 350 and three quarters.  So talk to me

21  about that.

22         MR. HARNETT:  You have a drop-down menu.  Let's

23  just assume we --

24         THE COURT:  Excuse me.

25         MR. HARNETT:  Let's just assume that we don't go

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    to the thousands place.  Let assume we go hundreds, tens

 2    units in terms of a number for an address.  All right?

 3         THE COURT:  Yeah.  That is fine.  Right.  So on

 4    that side of the street, it will be all even numbers so

 5    it will go from zero in two's until whatever the last is.

 6         MR. HARNETT:  I could conceivably have a drop-down

 7    menu that says thousands digits, one to nine, I click

 8    nine.  Hundreds digits, one to zero, I click seven.

 9    Single digits, three.  It is an address that doesn't

10    exist.  We get to the same place.

11         The words that I am taking issue with are "not

12    preselected or constrained by the system."  That is just

13    being put there to try to exclude drop-down menus because

14    they don't like -- they don't want to face a prior art

15    challenge based on previous systems that did have

16    drop-down menus.  We get to the same functional place in

17    terms of what the claim says what the invention does.

18    Doesn't matter to me, under my construction, whether

19    there is a building there.  We are in agreement on that.

20         I just don't think it is proper under the

21    canons of claim construction to add extraneous

22    limitations to a claim simply to avoid prior art.  That

23    is not what -- that is not the contract between the

24    patentee and the public.  The patentee and the public

25    have a contract.  The words of the claims tell you what
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1    is in the claims.  You don't get to rewrite them
2    specifically to avoid prior art years later.
3         THE COURT:  Let me tell you what I think was -- I
4    will give you a chance to talk about it, but just to save
5    steps, what I thought you meant when you talked about
6    drop-down menus is that you had a drop-down menu that has
7    a list of all addresses assigned by the post office, and
8    you would be forced to choose one of the post office
9    addresses and he said no, no, no, that is not what we are
10   doing because ours has the ability to hit those
11   in-between addresses.  I didn't think he was saying
12   anything about drop-down menus as such.
13        MR. HARNETT:  I understood him differently, and I
14   understood the briefing differently because of the prior
15   art issue.
16             I would submit that Mr. Dillard is trying to
17   have excluded -- if you adopt those words, those words
18   exclude drop-down menus.  That is what he is trying to
19   do.
20        THE COURT:  Excuse me.  Which slide is that?  43?
21        MR. HARNETT:  Slide 85, your Honor.
22        THE COURT:  Okay.  This is not their -- this is
23   not what they are proposing, but let me try out this
24   language for you and see whether you -- just so I
25   understand your position.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1            So if, instead of where it says not
2   preselected or constrained by the system, we said whether
3   or not it is a valid post office address, would that be
4   objectionable to you?
5        MR. HARNETT:  No.  That would not be
6   objectionable.
7        THE COURT:  Or if it said whether or not this is
8   an actual address in the physical world.  I am just sort
9   of making up terms here.
10       MR. HARNETT:  Sure.  The concept is simply the
11  user enters it.
12       THE COURT:  Okay.  Because that is what I think
13  the thing is.
14            Why don't we hear from Mr. Dillard and see
15  whether that would be problematic for him.
16       MR. HARNETT:  Thank you, your Honor.
17       THE COURT:  Were you following that?
18       MR. DILLARD:  Yes, your Honor.
19       THE COURT:  So instead of saying not preselected
20  or constrained by the system, it would be those phrases
21  like whether it is an address assigned by the post office
22  or whether or not it is an address that actually exists
23  in the physical world.
24       MR. DILLARD:  I think that would work because it
25  would include --
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  I don't need a because.  If we have

 2   agreement on that, why don't we settle on that as my

 3   construction.

 4          MR. DILLARD:  All right, your Honor.

 5          THE COURT:  I am not -- I am free to do that.  I

 6   am not required to adopt that.  So if I get both sides to

 7   think it is okay, I am free to select that construction.

 8   So why don't we go with that and move on to the next

 9   issue.

10          MR. DILLARD:  Thank you, your Honor.

11          THE COURT:  Okay.  So you can have either of

12   those, either assigned by the post office, whether or not

13   assigned by the post office or whether or not it

14   corresponds to an actual address in the physical world,

15   either of those constructions.

16          MR. HARNETT:  May I be heard with a suggestion?

17   We could take Mr. Dillard's claim construction and just

18   cross everything out after the comma.

19          THE COURT:  Does that work for you?  Because the

20   word potential suggests it might not be an actual

21   address.  Do you want to think about it for a second,

22   talk to your client?

23          MR. DILLARD:  If I could please.

24          THE COURT:  This is not the court of appeals.  I

25   don't have colleagues or anything.  It is very different
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   than the appeals.  Take your time.  We can even take a

2   recess if you need it.

3       (Pause in proceedings.)

4       MR. DILLARD:  Your Honor, that would also be

5   acceptable.

6       THE COURT:  Okay.  Victory.  Okay.  Okay.  Image

7   source.  Who wants to speak to that first?  Go ahead,

8   Mr. Dillard.

9       MR. DILLARD:  Image source is the source of the

10  images.  The issue -- Vederi's construction is a

11  computer-accessible storage of images linked to a

12  geographic locations, and Google's construction is a

13  source of recorded images.

14          One of the issues that has come up is whether

15  or not image source can be an image database, and I think

16  it is a very easy issue to resolve.  Claim 18 of the 760

17  patent is a dependent claim, and it depends from Claim 1.

18  And it states the method of Claim 1 wherein the image

19  source is an image database.

20          Well, if you have a dependent claim, that says

21  that the --

22      THE COURT:  Excuse me?

23      MR. DILLARD:  I'm sorry?

24      THE COURT:  You said claim, what?

25      MR. DILLARD:  18.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          THE COURT:  It is not in the joint appendix;

2    right?

3          MR. DILLARD:  It is not an asserted claim.

4              Do you have a copy of the 760 patent?

5          THE COURT:  I have a copy of the 760 patent.

6          MR. DILLARD:  The appendix only has the claims

7    which would be necessary.

8          THE COURT:  Okay.  So where is this?

9          MR. DILLARD:  Again, towards the end, in this case

10   Column 17.

11         THE COURT:  Yes.  Line 17.

12         MR. DILLARD:  Yes.

13         THE COURT:  The method of Claim 1 wherein the

14   image source is an image database.

15             You are using this as a -- in support of using

16   database, image database?

17         MR. DILLARD:  Yes, your Honor.

18         THE COURT:  I am not understanding what is at

19   stake here.  I am not following.

20         MR. DILLARD:  Okay.  From Vederi's view, what is

21   at stake here is that Google's construction is a source

22   of recorded images, and recorded images would be single

23   frames, in other words, whatever was being recorded by

24   the video cameras.  What is actually being stored are

25   composite images in the preferred embodiment of the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    Vederi patents, and we do not want to see a claim

2    construction that would exclude the storage of composite

3    images which is the preferred embodiment. So that is the

4    real crux of the difference between these

5    two constructions in Vederi's view.

6        THE COURT: Okay. Let me try to translate in my

7    own words what I think you just said to make sure I

8    understand what you just said. So you want the claim to

9    include not just the individual images but the stitched

10   together panorama.

11       MR. DILLARD: Correct.

12       THE COURT: Okay. So I understand what you are

13   trying to achieve, but I am not understanding next is how

14   the two different constructions affect that result.

15       MR. DILLARD: In Google's arguments, they argue

16   that the image source must be something different than an

17   image database.

18           Actually, the basis for that argument is that

19   during prosecution of the claim, the claim was rejected.

20   This would be apparently Claim 1 of the patent was

21   rejected, and a number of amendments were made. One of

22   the amendments was that the term image database was

23   changed to image source.

24           Now, it turns out that that particular change

25   had nothing to do with the reasons for the rejection,

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1  but, in any event, Google is arguing that there is a --

2  prosecution history, prosecution disclaimer that would

3  prevent the image source from including an image

4  database.

5      THE COURT:  Do we -- I assume the prosecutor

6  history is available.  Must be somewhere in the record.

7  I can't say I have it.

8          I mean it is not secret; right?  Everybody has

9  that.

10     MR. DILLARD:  It is absolutely available.

11     THE COURT:  And what exactly do you recall what

12  the objections were?  I mean, what the objection was

13  based on.

14     MR. DILLARD:  Yes.  It was based on a patent to a

15  gentleman named Levine, and Levine described a sort of

16  like what cars have in their nagivation system now where

17  you have a map that comes on the display, this could be

18  either in the car or a hand-held device, but as you are

19  driving through an area, it would constantly update the

20  maps.  And it described some of the -- or the map images

21  as exactly that, images, and there would be looking down

22  aerial images.

23          At the same time that the claims were rejected

24  on the basis of these images, it was explained what

25  Levine did, but the claims were also modified in several

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  ways.  And one of the ways was the inclusion of this

2  language, substantial elevations, that we will get to

3  shortly I am sure.  But the issue of the database being

4  converted to an image source had nothing to do with it.

5          In fact, Levine was not involved with

6  photographic images at all.  This is just a matter of

7  updating the map as you went through an area, presumably

8  he wasn't concerned about images because you were right

9  there looking at the images.

10          So with respect to there being any kind of a

11  prosecution disclaimer where Vederi supposedly said, oh,

12  image source.  We are changing it to image source because

13  image database has been rejected and we have to do

14  something different, that is not the case.

15          Image source is just a much more

16  understandable to, at least the lay public, than an image

17  database.  But the key thing is that the same claim, what

18  became dependent claim 18 was added and a dependent claim

19  adds a limitation to your independent claim where it said

20  the image source is an image database.  So image source

21  has got to be construed to be at least an image database.

22  Could be commensurate in scope.  Could be broader.  But

23  it wouldn't be narrower because that would make the

24  claims totally inconsistent.

25          THE COURT:  Okay.  Why don't we hear from Google.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1        MS. RAO:  So why don't we look at Slide 67.

2    Sorry.  68.

3        THE COURT:  Okay.

4        MS. RAO:  So I just want to begin by looking at

5    the two different proposals, and we say we propose that

6    image source means source of recorded images, and

7    Vederi's construction is a computer-accessible storage of

8    images linked to geographic locations.

9            And as Mr. Dillard alluded to,

10   computer-accessible storage of images linked to

11   geographic locations simply is another way of saying

12   image database.

13           Now, if you turn to Slide 69.  This is an

14   excerpt from the file history amendment where we can see

15   how Vederi changed its claims in order to, when they were

16   prosecuting them, to remove the word "database" and

17   replace it with the word "source."

18       THE COURT:  Are you claiming that this was done in

19   response to specific objection from the patent examiner?

20       MS. RAO:  Yes, your Honor.  In Exhibit K to our

21   declaration, we attached in support of our claim

22   construction brief is the office action where the

23   examiner issued a rejection.

24       THE COURT:  Right.  And can you point to where it

25   is?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          MS. RAO:  Yes.  I can certainly do that.  It is
 2    Exhibit K, and it is Page 3 of the office action.
 3          THE COURT:  Okay.
 4          MS. RAO:  And if you look at the top of Page 3, it
 5    says Claims 1 through 9, 11 through 34, 36 through 38 are
 6    rejected.
 7          THE COURT:  Hold on a second.  This is Exhibit K.
 8          MS. RAO:  Yes.  So maybe the fourth page, your
 9    Honor.
10          THE COURT:  Sorry?
11          MS. RAO:  Maybe the fourth page of the exhibit,
12    but it is on the top right.  It says Page 3.
13          THE COURT:  I see page 3 at the top right, and it
14    starts with E.
15          MS. RAO:  Yes.  And then right below it, that is
16    just quoting the statute.
17          THE COURT:  Okay.  I am with you.  Okay.
18          MS. RAO:  So right after the examiner quoted the
19    statute, he says they are rejected under 35 U.S.C.,
20    Section 102(e) as being anticipated by Levine.
21          THE COURT:  Right.
22          MS. RAO:  And what he is saying is Levine
23    discloses all these elements of the then pending claim.
24    And, then, if you look further down that page, it says so
25    Levine discloses a system including an image database.
```

 1    The first sentence at the top.

 2              Do you see that, your Honor?

 3         THE COURT:  Yes.

 4         MS. RAO:  Okay.  And he goes on to point out where

 5    the image database is disclosed in Levine.  And, then,

 6    further down, he talks about Levine also disclosing

 7    storing of plurality of images in the image database

 8    representing objects within the geographic area and then

 9    images providing a non aerial view of objects.

10         THE COURT:  Okay.

11         MS. RAO:  All right.  So those are the pertinent

12    pieces of it.  I mean, there is a lot more.

13         THE COURT:  How does changing database source

14    change any of that?

15         MS. RAO:  Right, your Honor.  We say that whatever

16    image source means, it can't mean exactly what it meant

17    before which is image database because typically when the

18    patent office issues a rejection saying this feature is

19    disclosed in the prior art and you amend your claims, you

20    are typically saying, okay, I am going to give up

21    something and get less than or something different.  So

22    our position is whatever image source means, it can't

23    mean the same thing as image database.  There must have

24    been some meaning.

25         THE COURT:  What does it mean?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          MS. RAO:  In our view, it means source of recorded

2    images, and I don't believe that it violates the doctrine

3    of claim differentiation.  If we look at Slide 72.  We

4    are not excluding composite images in our construction.

5    In other words, you could still have an image source that

6    is an image database.

7          So if we think of it as supposing you have a

8    claim of transportation apparatus with motor and wheels,

9    and then you have a dependent claim which says the

10   apparatus of Claim 1 is a transportation apparatus which

11   is an aircraft.  Now, you could have aircrafts that are

12   not a transportation apparatus with motor and wheels, and

13   you could have an aircraft that is within.  So we say

14   that the image database is the aircraft here.

15         And so you could -- and there is an embodiment

16   in the patent that is discussed where, for example, in

17   the 760 patent at Column 4, Line 44, it talks about an

18   alternative embodiment where images are recorded and

19   composite images are created on the fly and they are

20   stored.  So you could have an image database that is

21   storing images as they are being recorded in real time in

22   a database, and that would still be within the scope of

23   the invention and what they claim.

24         THE COURT:  And how are they different from image

25   database?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1      MS. RAO:  Well, it is different that it has a

2  different quality.  They are focusing on the storage

3  aspect, and they are saying it has to have composite

4  images.  We are saying, well, not only does it not have

5  to have composite images, it can have composite images,

6  but it must also be a recorded image.

7          So we are saying something different from what

8  Vederi is saying, and the way that is different is we are

9  saying whatever it means, it means it has to include

10 recorded images.

11         And as long as a composite image is also a

12 recorded image, it is included within the definition.

13     THE COURT:  I'm sorry.  If it is not a recorded

14 image, what else would it be?  I don't get it.  Are there

15 non-recorded images?  I am completely lost.

16     MS. RAO:  Okay.  So recorded images are images

17 that are taken as they are captured like Vederi's Figure

18 2 shows, you know, each image frame that is recorded.

19 That is a recorded image.

20     THE COURT:  Right.

21     MS. RAO:  And you could have completely

22 synthesized images that have no relation to what was

23 recorded.

24     THE COURT:  I have no idea what you are saying.

25 What does completely synthesized mean?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1      MS. RAO:  Well, you can take recorded images, and

2  there is a lot of image processing that happens.  And 20

3  steps later, you could create a synthetic image that had

4  nothing to do with where you started from.  And we are

5  saying that their claims are talking about the images

6  that you --

7      THE COURT:  You mean like pixelated, distorted or

8  something like that?

9      MS. RAO:  Right.  Image processing techniques that

10 are applied later on well after an image is recorded.

11     THE COURT:  Okay.  So now I know what you mean by

12 those terms so again.

13     MS. RAO:  So our proposal is image source means

14 source of reported images because every time the patent

15 talks about it, it talks about, you know, going down the

16 street, taking, recording images, acquiring images,

17 recording them.  It talks about an embodiment where you

18 record images and create and save them on the fly, and

19 create composite images on the fly.

20         We think that one possible explanation for

21 Vederi's amendment and the change of scope is that it

22 gave up the broad invention and was trying to claim

23 something narrow because Levine also had images that were

24 indexed to GPS locations.  So if you look at Vederi's

25 proposed construction, the images of Levine and database

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   of Levine would fit that definition because they had map

2   images, and the user was driving and would get images

3   transmitted to their GPS.

4           Now, obviously, the image would have to be

5   linked to a location in order for the image to get

6   transmitted, the right image to get transmitted to a

7   user.  So Levine had processed images that were linked to

8   geographical locations.  Levine had them stored in an

9   image database.  So what we have here is a situation

10  where Vederi is essentially saying that that amendment

11  didn't change anything and may, in fact, have broadened

12  the claims.

13          We don't think -- we respectfully submit that

14  it couldn't have been a broadening amendment.  It had to

15  have narrowed the claims in some way, and the only

16  alternative embodiment disclosed in the patents is where

17  images are recorded on the fly and composite images are

18  created on the fly.

19          THE COURT:  And what do you mean by on the fly?

20          MS. RAO:  Meaning in real time as they are being

21  recorded.  The image is captured during the capture

22  process.  It is being processed, and a composite pixel by

23  pixel panorama is getting created right there.

24          THE COURT:  As opposed to doing it later on the

25  server of a computer.  Okay.  Now, what difference does

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    that make in terms of this patent whether it is done on

2    the fly or it is done on --

3          MS. RAO:  Well, Google doesn't do it on the fly.

4    Google's accused product is very different from the way

5    the patent works, and, you know, I think fundamentally

6    the patent is about efficient images using these flat

7    vertical panoramas that are created on a column by column

8    basis taking a snapshot of street segments and then

9    combining them together, and Google uses a very

10   computationally intensive approach where you can -- can I

11   have Slide 53, please.

12          Just to illustrate.  So what we have in Figure

13   2, we looked at this earlier and Mr. Dillard alluded to

14   it, talked about street segment panoramas being combined

15   from different locations along a path to create a

16   panorama.  And that is the technique taught by Vederi.

17   When you asked him what the invention was, he talked

18   about street segments and taking these signals, these

19   pictures along the path and combining them into a

20   panorama.

21          What Google does is at each point along the

22   path, it takes multiple pictures and creates a spherical

23   panorama around the whole point right from where the

24   picture was taken not at an imaginary point off the path

25   and very computationally intensive.

1          So they talk about efficiency.  We are not

2     worried about efficiency.  We are doing a completely

3     different technique to get a better user experience where

4     a user can stand in one space and look around them, all

5     around them and see the whole panorama like a sphere.

6          Can you turn to the next slide, the spherical

7     panorama unfolded.

8          So we have a picture showing the unfolding of

9     the panorama.  If your Honor wants to go see the picture

10    of the Versailles Palace in Paris on the street, you get

11    a sense of how the things go up all around the picture,

12    and that is nowhere disclosed in the patent.

13         THE COURT:  Okay.  So let me just make sure I

14    follow all this.  I mean, I understand this issue, but

15    this issue now before us, now I am trying to understand

16    how the two -- I mean, that is a question of whether

17    there is infringement if I understand correctly.

18         MS. RAO:  Well, that has to do with the

19    substantial elevations term.

20         THE COURT:  Right.  But the way, the way Google

21    does it was the way Vederi does it, has to do with the

22    question of whether there is infringement.  Different

23    technologies might not be infringing; right?  So I

24    understand that is down the road, that is not something I

25    decide right now, and I am trying to come back to the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   question we have here and understand how it is that this

2   issue, the image source issue bears on --

3          MS. RAO:  On the recorded images issue.

4          THE COURT:  Because this just seems to deal with

5   source, source of -- I mean, your construction is source

6   of recorded images which seems to actually be broader

7   than their term.

8          MS. RAO:  Right, your Honor.  It is broader in

9   some ways.  That is why I showed the Venn diagram showing

10  that you could have image sources that are not image

11  databases.

12         THE COURT:  So this is a situation where you want

13  their claim to be broad.

14         MS. RAO:  No, your Honor.  They narrowed it in the

15  way that it doesn't --

16         THE COURT:  But I am looking at the two proposed

17  constructions, Google's claim construction and Vederi's

18  claim construction, and your construction seems to be

19  broader, include more things.

20         MS. RAO:  Except that it says recorded images, and

21  theirs says images linked to geographic locations, and so

22  recorded images are actually narrower than what they

23  have.

24         THE COURT:  I see.  Because in your view, when you

25  say recorded, you are talking about images as snapped by

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    the camera and without further processing?

2         MS. RAO:  There can be further processing as long

3    as it is happening during the recording process which is

4    discussed in the alternative embodiment of the patent.

5         THE COURT:  Now, I am confused again.

6         MS. RAO:  Right.

7         THE COURT:  Start with the real world, right, and

8    light comes from the sun.  Light bounces off an object,

9    enters a lens; right?  It goes through an aperture and

10   then hits some medium that records it.  Used to be

11   silver.  Before that, used to be egg whites; right?  Long

12   time ago, but it is no longer film.  It is some sort of

13   medium that is electronic; right?  And that is where I

14   get lost.

15        I don't know exactly happens at that point.

16   At which time does the recording stop and the processing

17   begin?  In your view, it seems to me once it hits

18   whatever the recording is everything that happens after

19   that is processing.  Whether it happens right there in

20   the car or if it happens a little bit later or it happens

21   a split second later.  Seems to me once the light hits

22   the recordable medium, that recording ends, and at that

23   point everything that happens afterwards is processing;

24   no?

25        MS. RAO:  It is my understanding that when --

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    actually, and forgive me if I get this wrong, but my

2    understanding is --

3        THE COURT:  It is your client who is going to have

4    to forgive you.

5        MS. RAO:  So my understanding is when you take a

6    picture on a digital camera, the picture hits the image

7    sensor, and then from the point at which it hits the

8    image sensor to the point at which it is stored on some

9    sort of a storage medium as a recorded image of what was

10   captured, the image frame, there is a lot of processing

11   that happens.

12            There is a computer in there in these digital

13   cameras, and so there is an embodiment discussed in the

14   patent which is even more complex than that.  So you

15   could have a system --

16       THE COURT:  Let me just stop you because I want to

17   understand that thought that you just put out before I

18   get to the next thought.  So in your interpretation of

19   the technology, the recording happens at what point?  At

20   the point it is stored in a medium?

21       MS. RAO:  At a point where it can be retrieved

22   again as the recorded image.  So it could be on a card in

23   the camera.

24       THE COURT:  So the stuff that happens between the

25   aperture and the actual recording to essentially a hard

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    drive -- right -- card, whatever you have on your camera,

2    some sort of permanent storage medium, they are steps

3    that involve processing.  Okay.  And in your view, all of

4    that stuff would not be included in the idea of recorded

5    images.  So recorded images is this thing that happens

6    after all that processing happens?

7        MS. RAO:  Well, we are talking about the images.

8    Right.  So I am saying whatever the end result of the

9    image capture process is, that is the recorded image.

10       THE COURT:  Okay.  And so, in your view, the

11   source involved those things, the things that are

12   actually stored, captured, whereas you believe in their

13   construction, it covers, what?

14       MS. RAO:  That they are just focused on composite

15   images and processed images.

16       THE COURT:  Well, they said talk about storage of

17   images linked to geographic location, so since they are

18   focusing on storage, I am not understanding how that is

19   different from your --

20       MS. RAO:  Right.

21       THE COURT:  I haven't finished talking.  You can't

22   give an answer until I have finished talking.

23            You used the word recorded.  They use the word

24   storage.  And you must, as I understand it, you must

25   think those two things are different animals.  Am I not

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    understanding you?

2              Now, you can talk.

3         MS. RAO:  So when you -- you are just comparing

4    the word storage.  The rest of their construction is

5    linked to geographic locations.

6         THE COURT:  Let's not talk about the rest of it.

7    Let's just talk about those two words.  We can then talk

8    about why the rest of the words may change everything,

9    but let's just focus on those two words because they are

10   different in the two constructions and I want to know if

11   they, in fact, mean different things.

12             If you want to talk to somebody here, that is

13   fine, take all the time you want, but this is important.

14   Are you following?

15        MS. RAO:  I didn't follow your question.

16        THE COURT:  Okay.  You have got the

17   two constructions next to each other; right?  One of them

18   used the word recorded; one of them uses the word

19   storage.  They are different words.  Do they have

20   different meanings?

21        MS. RAO:  Yes.

22        THE COURT:  Explain to me how.

23        MS. RAO:  Recorded image was the original captured

24   image.  Stored image doesn't have to be the originally

25   captured image.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  You know, I always work better with,

 2   for examples.  Why don't you give me a for example?

 3          MS. RAO:  For example, if you look at Figure 2 of

 4   their patent, a recorded image would be the image frames

 5   that are captured, and the stored image would be the

 6   panorama that was synthetically created, two different

 7   things.

 8          THE COURT:  What about that whole discussion we

 9   had about all the processing that happens before the

10   thing gets fixed or captured?

11          MS. RAO:  Well, there is a lot of processing that

12   happens in order to get that individual image frame.  As

13   you know, there is white balance, color correction, et

14   cetera, but the kind of processing they are talking about

15   which creates a panorama is completely different.  It is

16   about now taking individual frames and stitching them

17   together.

18          THE COURT:  You build all of that into the word

19   storage as opposed to recorded?

20          MS. RAO:  Well, storage is -- I built it into the

21   word recorded, but the word storage doesn't say anything

22   about what kind of image is stored.

23          THE COURT:  I have no idea what you are talking

24   about.  I am just completely lost.

25          MS. RAO:  I apologize, your Honor.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  Remember we had the whole discussion

 2    about what happens, the lens, the light, the processing

 3    that happens, and it eventually gets captured on a

 4    permanent storage media; right?

 5          MS. RAO:  Right.

 6          THE COURT:  And you said that is what you think is

 7    recorded in your construction; right?

 8          MS. RAO:  Right.

 9          THE COURT:  It is that image, this thing that

10    actually first gets captured.

11          MS. RAO:  Right.

12          THE COURT:  How is the word storage any different

13    from that?

14          MS. RAO:  Because storage is not limited to

15    recorded image or originally captured image or acquired

16    image.  It is simply storage.  It is a function of, you

17    know, it is a computer drive is what they are saying.  So

18    they are taking image storage and making it about the

19    database that is storing something, and we are focused on

20    the image.

21          THE COURT:  Let me try one more time.  You say

22    according to what I understand, what you say is source of

23    recorded images.  This is now the Google construction.

24    You are talking about, I believe, as it first gets

25    captured in a permanent media; right?  You are nodding,
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    but the reporter.

2           MS. RAO:  Yes, sir.  Yes, your Honor.

3           THE COURT:  Okay.  Fine.  I got that.  I

4    understand that.  And you said this processing, that

5    happens before that, yes?

6           MS. RAO:  Yes.

7           THE COURT:  And that gets included in whatever.

8    So all the processing that happens before it gets

9    captured is included in the recorded images, and then

10   there could be processing that happens afterwards,

11   stitching, whatever.  Yes?

12          MS. RAO:  Yes.

13          THE COURT:  Okay.  So when you talk about storage

14   here, and you say the two things are different because

15   the Google construction includes the image as captured,

16   includes all the processing that happens this side of the

17   medium.  So it has the aperture, has the length but not

18   after it as been recorded.  Storage includes something

19   else?

20          MS. RAO:  Yes, your Honor.  It includes the

21   linking to the GPS coordinates.

22          THE COURT:  But, no, that is the rest of the

23   description.  I am trying to focus on those two words.

24   As I said we will get to the rest of the words as soon as

25   I understand what the difference is between these

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1     two terms.  If you want to now talk about linked to

2     geographic locations, we can talk about that.  I am

3     trying to understand the difference between storage and

4     recorded.  And so far you have succeeded not at all in

5     explaining it to me.

6             MS. RAO:  A stored image can be a recorded, I

7     believe, but it does not necessarily have to be a

8     recorded image.

9             THE COURT:  Give me an example of something that

10    is a stored image but not a recorded image.

11            MS. RAO:  Right.  A stored image could be an image

12    that is captured with the camera, and that is a stored

13    image and that is a recorded image, but -- if you take

14    that same image and add to it information about where you

15    got that image from and now put it in a database saying,

16    okay, this image goes to this street address and belongs

17    here, that is a stored image but not a recorded image

18    because there is a lot of processing that happens after

19    recording to alter the image.

20            THE COURT:  Let me just make sure for purposes of

21    your argument here, does anything else matter except the

22    addition of those words linking it to a specific

23    geographic location?  You don't care about the white

24    balance.

25            MS. RAO:  No, we don't.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1          THE COURT:  You don't care about brightness or any
2     of that stuff.  Right?  What you care about is the fact
3     that it gets -- it involves linkage to a particular
4     location.
5          MS. RAO:  Well, may I have a moment, your Honor.
6          THE COURT:  Sure.
7          (Counsel confer.)
8          THE COURT:  I'm sorry.  You are back.
9          MS. RAO:  Sorry.  So the modifier we have a
10    dispute with, we need the word recorded in Vederi's
11    proposed construction.  So we would have a dispute with
12    simply just storage without any modifier.
13         THE COURT:  You would not?
14         MS. RAO:  We would.
15         THE COURT:  Okay.  That is the part I am trying to
16    understand.
17         MS. RAO:  So we believe the storage is a very
18    broad term, broad enough to encompass any way to store
19    any kind of image, and we believe that in light of what
20    happened in the prosecution history and in light of what
21    is disclosed, that it has to have something to do with
22    the image that was originally captured.
23         THE COURT:  Okay.  I don't get it, but why don't
24    you go ahead and talk about the linked to geographic
25    locations.  What about that language?
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1     MS. RAO:  So in terms of linked to geographic

2     locations, we think that is just something that was

3     already in the prior art in the Levine patent.  They

4     added this phrase to overcome Levine, and their proposal

5     would make no difference than between image database and

6     what is proposed.  It means the same thing.

7         THE COURT:  Okay.  Mr. Dillard, why do you need

8     this linked to geographic locations?

9         MR. DILLARD:  In the context of the invention in

10    the claims, it seemed to make perfect sense.  We can

11    withdraw it.  The construction would be broader with just

12    computer accessible storage of images.  As long as it is

13    understood that the images are both recorded images and

14    processed images, for example, composite images as shown

15    in the --

16        THE COURT:  Yes.  I don't see anything that

17    suggests they have to be linked to the geographic

18    location.  I don't see anything about the images that

19    suggest that, but I don't have any problem with the rest

20    of it.  So computer-accessible storage of images is fine.

21        MR. DILLARD:  Thank you, your Honor.

22        THE COURT:  We will go with that construction.

23    Okay.  Next item.

24         Depicting views, the views being substantial

25    elevations.  I know this is a biggy, although I have no

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   idea what it means.  But I am sure you will enlighten me.

2           Well, I have some idea what it means.  I am

3   sure I will first be more confused before I am

4   enlightened.

5           What is at stake here?

6           First of all -- excuse me -- can you help me

7   find it in context in Joint Appendix A or some anywhere.

8   I would like to see the language in context.

9       MR. DILLARD:  If we have the 760 patent.

10      THE COURT:  760 patent.  That is fine.  That works

11  for me.

12      MR. DILLARD:  And, again, going to Column 15.

13      THE COURT:  I am with you.  Page?  I'm sorry.

14  Line?

15      MR. DILLARD:  The claim element in Claim 1 starts

16  around 63.

17      THE COURT:  Right.  I do have them at home, but,

18  never mind, go ahead.

19      MR. DILLARD:  Well, so this element reads

20  receiving from the image source a first image associated

21  with the first location.  The image source providing a

22  plurality of images depicting views of objects in the

23  geographic area, the views being substantially elevations

24  of the objects in the geographic area wherein the images

25  are associated with image frames acquired by an image

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1    recording device moving along a trajectory.

2         THE COURT:  Okay.

3         MR. DILLARD:  So we have this phrase, the views

4    being substantially elevations of the objects in the

5    geographic area.

6              And the different constructions, we propose

7    front back or side views.  And, actually, in preparing

8    for the hearing, it occurs to me that if you are taking a

9    picture from a camera, you will certainly get the front

10   of whatever object you are looking at.  You may get some

11   of the side, but you would never get the back of that.

12   So I think our claim construction ought to be modified to

13   remove back views just from a practical standpoint.

14        THE COURT:  That makes sense, but the operative

15   difference between your construction and Google's

16   construction is you agree on the front.  Back, you now

17   say, the front -- I'm sorry -- the front and side.  That

18   is all the front and side views, but they say, our

19   pictures actually go up, and you can actually sort of see

20   up whereas this is a flat picture.

21        MR. DILLARD:  In the embodiments, they are very

22   long, certainly need to be that long.

23             What is agreed upon is both the composites

24   shown in the patent as well as Google's images are both

25   composites.  In other words, you are stitching together
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    photographs.

2              Now, in the Vederi preferred way, they will

3    stitch together splices of various recorded images in

4    order to get a nice wide angle, but as shown in, for

5    example, that Figure 16 of the Scout Tool, you do get

6    angles, so you can see sides of buildings and so forth.

7              The Vederi composites are stored as

8    rectangular composites.  Google's, they do have

9    360-degree composites, and they are apparently mapped on

10   the sphere and then stored on a flat plain, sort of like

11   if you had a globe, you made it flat.  So the question is

12   should the views being substantially elevations be

13   limited to flat vertical orientations.

14             And we know that both the Vederi system and

15   their composites and Google's composites if you look at

16   them, if you pull up the street view, it is an

17   elevational view of a building if you are looking out

18   from the side camera, but it is an elevational view of

19   whatever the camera is pointed at.

20             Now, the basis for the claim that the Google

21   style 360-degree panoramas is that there is a prosecution

22   disclaimer, and, basically, they are saying that because

23   of something said in the background of the invention

24   section of the patent, that the spherical-type mapping

25   that Google does is something that has been excluded from

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    the scope of the claims.  And we couldn't disagree more.

2        THE COURT:  Well, but there is really no claim to

3    anything other than it says substantially elevations, and

4    I haven't looked up the term elevations, but my

5    understanding from the days when I was doing construction

6    on my house is that and here in the building, that they

7    are just flat images.  There are some perspective images

8    of other locations.

9        MR. DILLARD:  Well, the fact that if you pull up

10   street view, you might be able to pan up or down doesn't

11   alter the fact that when you pull it up for an address,

12   you are getting an elevational view of whatever is right

13   in front of or the address.

14        Now, so what Google said has happened that in

15   the background section, the inventors were discussing

16   prior art and they made this disavowal.  The problem is

17   that the Google expert has misread the language and came

18   to a conclusion that it just does not follow.

19        If I could call the court's attention to

20   Column 1 of the 760 patent.

21        THE COURT:  Column 1?

22        MR. DILLARD:  Yes.

23        THE COURT:  Okay.

24        MR. DILLARD:  There is two prior art methods that

25   the inventors are distinguishing.  One is not as critical

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    to us, but it is this three dimensional rendering where

2    you create a virtual -- what do they call it --

3    electronically piecing photographs on a polygonal mesh

4    that provides the framework of a three dimensional

5    rendering.  That is shown and described in Dr. Goncalves'

6    declaration.  But the more important one and the one that

7    Google claims provides a disclaimer is the paragraph that

8    starts at Line 63.

9         It reads, "the prior art further teaches the

10   dense sampling of images of an object scene to provide

11   different views of the object, slash, scene.  The

12   sampling is either done in two dimensions either within a

13   plain or on the surface of an imaginary sphere

14   surrounding the object, slash, scene.

15        Now, Google's expert appears to have read that

16   as not a imaginary sphere surrounding the object or scene

17   but an imaginary sphere surrounding the camera and this

18   is quite a different situation.  If you have an object in

19   the scene whether it is a tree or building, you can

20   imagine a giant bubble around it.  And what the inventors

21   are talking about is there would be cameras all around

22   this object and taking enough photographs so that you

23   could go to any other view, any other location on this

24   sphere and be able to see that object from that view.

25        So it is -- there was an example of a piece of

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  art that had images taken all around it, and it was

2  museum art.  And people were able to basically look all

3  the way around, spin it on the computer based on all

4  these different camera angles.  And it would be just, you

5  know, like being able to turn it and look up and down and

6  so forth if you had enough cameras.

7         This is a technique referred to as light

8  rendering.  That particular language is not used in the

9  patent but this dense sampling is.  And that is a whole

10  lot different than having six or eight cameras all

11  looking out in different directions and just taking

12  photographs.

13         And so the inventors describe this sampling of

14  looking toward an object from different view points as

15  such sampling, however, is computationally intensive and

16  hence cumbersome and inefficient in terms of time and

17  cost.  You can just imagine if you were trying to, you

18  know, do this spherical looking in on every object in a

19  scene, it would be incredibly expensive as opposed to

20  just taking photographs.

21         So that is what the inventors were talking

22  about when they said computationally intensive as opposed

23  to what Ms. Rao indicated that the Google system is

24  computationally intensive.  There are worlds of

25  difference.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1        Now, did the inventors have in mind 360-degree

2   panoramas when they filed their application?  And the

3   answer to that is yes.  And they actually disclose the

4   possibility of 360-degree panoramas in addition to their

5   long panoramas.

6        THE COURT:  Where is that?

7        MR. DILLARD:  That is in the provisional patent

8   application which was filed in August of 2000 -- a few

9   months before the regular application, but it is

10  incorporated by reference in all of the patents.  So it

11  is as though the disclosure there is part of all the

12  patent.

13        And this is -- the quote that we have been

14  looking at is in our responsive brief it is at Page 21,

15  describes -- see, that would be Document 56, your Honor.

16       THE COURT:  What does it say?

17       MR. DILLARD:  The paragraph of interest is future

18  embodiments of the invention could produce video, slash,

19  image data in different formats, for example, rather than

20  using a camera facing.

21       THE COURT:  I got it.  What page?

22       MR. DILLARD:  I'm sorry.  21.

23       THE COURT:  Okay.  What line are you reading from.

24       MR. DILLARD:  I started at 13.  Where I was

25  getting to --

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  Future embodiments?

 2          MR. DILLARD:  Yes.  And, in particular, the second

 3   sentence in that paragraph, also, if sufficient cameras

 4   to cover all viewing directions are used so as to provide

 5   360 degrees of view, images and synthetic panoramas where

 6   the direction of view is user controllable can be

 7   provided.

 8          So clearly they had in mind 360 degrees

 9   panoramic views, but, of course, that was far more

10   expensive at the time, but they certainly had, you know,

11   synthetic 360-degree panoramas in view which is what

12   Google is saying.  You can spin 360 degrees.

13          There is no question that they are composites.

14   It is admitted in their papers that those are composite

15   images, and there is, really, we see no reason other than

16   Google finding a noninfringement argument to restrict the

17   language, substantially elevations to being flat

18   vertical.

19          THE COURT:  Okay.  Why don't we hear from Google?

20          MR. DILLARD:  I'm sorry?

21          THE COURT:  We will hear from Google.

22          MS. RAO:  Before I begin, the substance of the

23   technical merits of the arguments and the terms, I would

24   like to say that the disclaimer we are relying on is a

25   disclaimer in the specification and that the law for a
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    specification disclaimer is that when the inventor

2    dictates the correct claims code in their specification

3    that that should govern the claim construction process.

4            And so I will get to that.  That is from the

5    Phillips case, Phillips v. AWH, and so we are relying an

6    a specification disclaimer not a prosecution disclaimer.

7    So looking at the two constructions.

8        THE COURT:  And what packet exactly does the

9    disclaimer say?

10       MS. RAO:  So I will -- can I have Slide 41,

11   please.  So what we are saying is the background is

12   talking about a method of visual nagivation going down

13   the street.  So it is saying it is discussing different

14   prior art approaches to get a wider field of view or

15   images, and in that sense, it talks about using a shorter

16   focal length of a video camera to get a wider angle, and

17   then it talks about dense sampling of images right after

18   discussing the visual nagivation and going to shorter

19   focal length to get a wider range of view.

20           And, then, it says, the prior art teaches

21   dense sampling, and the sampling can be done in

22   two dimensions in a plane or on the surface of an

23   imaginary sphere surrounding the object or scene.  And

24   such a sampling is computationally intensive and, hence,

25   cumbersome and inefficient in terms of time and cost.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

 1   And so this language explicitly disclaims circle

 2   projections on an imaginary sphere.

 3          It doesn't say light field rendering here.  It

 4   doesn't say light field rendering anywhere in the patent.

 5   Vederi agrees that there was a disclaimer.  They are

 6   disputing the scope of the disclaimer.  They are saying

 7   it was limited to inward looking views because it is

 8   about light field rendering.

 9          Now, we took a look at the evidence they cited

10   to us, and I would like to direct the court to Slide 59.

11   Here, Vederi's inventor says that our expert confused a

12   spherical reference frame around a camera that is inward

13   looking with an outward looking view, and the inward

14   looking view is used for light field rendering, and that

15   is the method we were distinguishing.

16          And if you then skip ahead to Slide 62, Vederi

17   cites to a Levoy article and talks about a Levoy patent

18   they submitted to the patent office saying this is about

19   light field rendering and that is different from what we

20   are doing.

21       THE COURT:  Let me say this.  Why is this an

22   infringement issue?  Why isn't this a claims construction

23   issue?

24       MS. RAO:  Because there is a specification

25   disclaimer and so they are trying to say substantially

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    elevations.

2          THE COURT:  I mean, what you are trying to do is

3    add an exclusion to the claim.

4          MS. RAO:  That's correct, your Honor.  And we

5    believe, in this instance, it is proper to do that

6    because it is a specification disclaimer, and it is

7    permissible under Phillips.  In fact, where the

8    specification says an intentional when the specification

9    reveals an intentional disclaimer which this is not what

10   my patent is about.  I don't do this.  This is not

11   covered by my invention.  It is entirely proper to put

12   that as a limitation on the claim.  So we believe that it

13   is a proper issue for claim construction.

14         THE COURT:  And you say this is --

15         MS. RAO:  I'm sorry.

16         THE COURT:  You are saying this supersedes the

17   provisional application which opposing counsel was citing

18   me?

19         MS. RAO:  The provisional application is not

20   relevant to this issue.  The provisional application is

21   talking about looking up the street, looking down the

22   street and then talking about panning 360 degrees along

23   an equator, not along a sphere.

24              So if we look at that disclosure in the

25   provisional, Slide 50, it is talking about going up the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   street, down the street, all round the street.

2          THE COURT:  It doesn't say that.

3          MS. RAO:  Well --

4          THE COURT:  I mean, you tell me that is what it

5   says, but, in fact, it just says 360 degrees.

6          MS. RAO:  360 degrees doesn't make a spherical

7   projection.  While this says 360 degrees, the disclaimer

8   says we disclaim spherical projections that that is

9   computationally intensive, and that is not what we do.

10          THE COURT:  I guess I am having trouble

11   understanding.  So what you are saying is so this was

12   meant to say you could do a 360-degree view on a

13   horizontal plane?

14          MS. RAO:  That's right.

15          THE COURT:  And how is that different from

16   stitching together images?  Does that mean that you can

17   look up the street and down the street?

18          THE WITNESS:  Well, it is simply saying take the

19   segments of the images and you can stitch them together.

20   Our position --

21          THE COURT:  Right.  We are talking about stitching

22   them together.  And I understand that is what they are

23   doing.  They are stitching together the image.  How is

24   that different from this 360-degree view that you talk

25   about here?  You say, oh, no, here, it talks about if you

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  have enough cameras, you could get a 360-degree view.

2  You are saying, well, that means a rotational view.  What

3  does that have to do with stitching?

4       MS. RAO:  All that adds is a slice of a sphere.

5  It doesn't add the sphere.  So if I stand in one spot and

6  I turn around and take pictures all around, 360 degrees,

7  I stitch them together using the Vederi claim method of

8  the column by column approach.

9       THE COURT:  See, that is what comes from not

10  listening to the question.  I understand the difference

11  between 360-degrees and a horizontal plane.  I understand

12  that so telling me that distinction again is not going to

13  help.  What I am saying is if I accept your view that

14  this is a 360-degree image on a horizontal plane, how is

15  that different than just stitching together a bunch of

16  images?  What does that add?  You say you can also do

17  this other thing, but you have already agreed that they

18  are talking about stitching images together.  So what

19  does this other thing they are saying they could do add?

20       MS. RAO:  I am not following your question.  I'm

21  sorry.

22       THE COURT:  What is it they are saying here they

23  could do in addition to what they claim otherwise?  See,

24  this where they are saying if you have sufficient

25  cameras, you could provide 360-degree views.  What is the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    additional?  What is the incremental thing we are talking

2    about there?

3         MS. RAO:  All they are talking about is having

4    more pictures and more viewing directions.  You would

5    still have the panorama along the flat vertical.  So it

6    wouldn't look like a sphere.  It wouldn't look like a

7    spherical projection.  So they are simply talking about

8    having a user be able to view different viewing

9    directions.

10        THE COURT:  Okay.  Try column A.  Column B, again,

11   what could you do without this that you could do with

12   this?  Give me an example of something that would fit

13   into this that wouldn't fit into that?

14        MS. RAO:  What is the that?

15        THE COURT:  You are saying this is an addition,

16   they claim here they can do this if they have more

17   cameras.  You are saying that is all in one.  You are

18   talking, again, always one angle.  Right.  Okay.  And so

19   what are they adding?  What is it more than the -- they

20   said if you had more cameras, you could do more.  What is

21   that more you are talking about here?

22        MS. RAO:  I don't believe they are claiming more

23   than what is already in the spec.

24        THE COURT:  Well, on the other hand, if I read it

25   to mean 360 degrees up and down, then it does mean more,

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   and then this makes sense.  To say, oh, it doesn't really

 2   claim anything more, that sort of defeats your

 3   construction.  It means you are wrong about what it must

 4   mean because it must mean something.  It must mean you

 5   could do something here more if you have more cameras.

 6   So what is that more as you see it?

 7        MS. RAO:  More as I see it, it is more images to

 8   put into the database so that if a viewer says I want to

 9   look in that direction, it can pull up an image from that

10   view.

11        THE COURT:  You just pointed at a particular

12   direction, but I don't know what direction you are

13   talking about.

14        MS. RAO:  If we are talking about a horizontal

15   plane, I am saying that the side views are the ones that

16   are stitched together into the panorama.  The front, the

17   back or the angular views may simply be views that are

18   stored in the database for retrieval, not necessarily

19   stitched into one panorama.

20        THE COURT:  Okay.

21        MS. RAO:  The technique they disclosed was about

22   taking flat images and stitching them together, and they

23   said --

24        THE COURT:  Give me one thing you could see under

25   this addition that you couldn't see without this
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   addition.  Give me one thing.

 2          MS. RAO:  One thing here is that --

 3          THE COURT:  Just one thing.

 4          MS. RAO:  Pictures of the front and back of the

 5   road.

 6          THE COURT:  So up the street, down the street.

 7   Okay.

 8          MS. RAO:  Now, getting back to their point about

 9   the Levoy patent, and they said that that was

10   distinguished.  I would like to turn to Slide 63.

11          THE COURT:  Okay.

12          MS. RAO:  And this field of light field rendering

13   talks about both inward looking and outward looking

14   views, that is said right in the abstract of the Levoy

15   patent.  They say is an example of the light field

16   rendering that we are distinguishing.  So it is not

17   simply inward looking views, it is also outward looking

18   views.

19              If you look at the next slide, Slide 64, they

20   focus on a picture of a lion being photographed from

21   multiple directions, but, here, in the Levoy patent,

22   there is a picture of a hallway showing that you could

23   use --

24          THE COURT:  Well, that is fine.  Thank you.

25              I don't think the patent disclosed anything
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    about spherical views.  So I will go with Google's

 2    construction on this one.  Okay.  Except take out the

 3    backs.  Okay.

 4              Next item.

 5         MR. DILLARD:  That is the "associated with," your

 6    Honor.

 7         THE COURT:  I think that is what I have on my

 8    list.

 9         MR. DILLARD:  Your Honor, Vederi doesn't believe

10    that "associated with" actually needs construction.

11    "Associated with" is a broader term than what Google

12    proposed which is "corresponding to."  One of the uses of

13    "associated with" is in Claim 1 of the 316 patent which

14    just says displaying an icon associated with an object in

15    a geographic area.

16              An icon wouldn't correspond to the geographic

17    area, it is just associated with it.  So this is

18    something where I think associated with is adequately

19    understood by anyone reviewing the patents.

20         THE COURT:  Okay.  Well, let me hear from Google

21    as to why they think it needs construction.

22         MR. HARNETT:  Afternoon, your Honor.

23         THE COURT:  Mr. Harnett again.

24         MR. HARNETT:  Yes, your Honor.  I will be brief on

25    this.  It is simply a matter of getting the appropriate
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    claim scope and making the words mean what we think they

 2    should be in view of the specification.  It is very

 3    simple.  If you look at Page 76 of our presentation, we

 4    look at the claim language.

 5           THE COURT:  Wait.  Which one?

 6           MR. HARNETT:  I am focusing on our presentation.

 7           THE COURT:  The slide.  We are talking about

 8    slides here.  76.  Okay.

 9           MR. HARNETT:  Going to very quickly go through the

10    sources of intrinsic evidence when you look at the way

11    the words are written, "first image associated with the

12    first location."

13           THE COURT:  I'm sorry.  Let me just step back.

14    Where do we find this?  This is Claim 1 of the 316

15    patent?

16           MR. HARNETT:  Claim 1 of the 760 patent.

17           THE COURT:  Of the 760 patent?

18           MR. HARNETT:  Yes, your Honor.

19           THE COURT:  Okay.  Maybe you can help me find it.

20    There is a lot of words there.

21           MR. HARNETT:  Well, the entirety of the claim, if

22    it is easier for your Honor, the entirety of the claim is

23    on Slide 76.

24           THE COURT:  That is the claim.  Okay.

25           MR. HARNETT:  It is the entirety of the claim.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
1          THE COURT:  Okay.

2          MR. HARNETT:  And we have highlighted the relevant

3   language where the word "associated with" appears.  We

4   just think when you look at the words of the claim, it

5   means more than somehow related to.  There is a

6   correspondence in the syntax of the claim.  "Associated

7   with" in our mind is a nonlimitation.  I mean, I'm sorry,

8   related to Vederi's construction is a nonlimitation.

9   One can imagine any relationship between any two things.

10          I am related to this podium because we are

11  composed primarily of carbon.  This is linguistically a

12  correspondence not simply some relation.  And I can -- in

13  terms of additional intrinsic evidence, if we flip to

14  Slide 77, the specification which informs the

15  construction of the claims also shows linguistically

16  correspondence rather than simple or ambiguous relations.

17  These all linguistically talk about correspondence, and

18  we have a simple example on Slide 80 to illustrate the

19  point.

20          We look at -- if you put up Slide 80, looking

21  at a table identifying all the In-N-Out Burger

22  restaurants around here.

23          Okay.  I will say when you come out west, you

24  always try to get one.  These, if you put two images in a

25  table, they are related to each other, but this
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    photograph down here in the left corresponds only to the

2    mountain view.

3            You can relate anything you want in terms of

4    any characteristic, but when you read this in the context

5    of the patent, the words "associated with" imply a

6    correspondence, just a matter of linguistics.

7        THE COURT:  But what I understand Mr. Dillard to

8    be saying is I think he was saying the "related to"

9    construction just doesn't need any construction.

10   "Associated with" is good enough.  So you are sort of

11   arguing against a, I mean, I think he moved on in the

12   language and says just go with "associated with".  And

13   how is "corresponding to" different from or superior to

14   "associated with."

15       MR. HARNETT:  As long as the associated with is --

16   any words, you can dig out dictionaries, and Vederi did

17   it.  There is different definitions for every word.  But

18   when you look at the intrinsic evidence, the "associated

19   with" always includes a correspondence.  That is what

20   this is about.  You have got an image.

21       THE COURT:  You should be happy with "associated

22   with."

23       MR. HARNETT:  Provided that we don't, later on,

24   when we are talking about infringement, turn it back into

25   "related to."

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  I think you have what is called a

 2   file-wrapper estoppel.

 3          MR. HARNETT:  I will take it, your Honor.

 4   Judicial estoppel.

 5          THE COURT:  Do they still call it that?

 6          MR. HARNETT:  Prosecution estoppel?

 7          THE COURT:  They always change all the terms.

 8          MR. HARNETT:  Yes, your Honor.  Thank you.

 9          THE COURT:  We will just go with "associated

10   with", and you will have a transcript of this hearing

11   because I am sure you are going to order a transcript.

12   So if there is any doubt about it, there it will be.

13   Okay.  Associated with.

14          MR. HARNETT:  Thank you, your Honor.

15          THE COURT:  Well, the final item, first display

16   area, second display area.  As I said as we got closer to

17   the end of the claims, I got less and less familiar with

18   them, but I am catching up.

19          MR. DILLARD:  Your Honor, this is the language is

20   first display area on the screen and second display area

21   on the screen.  We suggest that the use of these terms

22   indicates that you have got a map in one display area,

23   and an image in another, and they are shown at the same

24   time.  In other words, it would be different if you

25   toggled between two different -- well, it would be
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    two different screens.

 2              So that is what I understand Google is

 3    advocating, and I think, you know, it hardly needs

 4    further construction, but to the extent that we would not

 5    have simultaneous images on the screen.

 6         THE COURT:  Well, they think it doesn't need

 7    construction.  You say it doesn't need construction.  Why

 8    don't we just leave it at that?

 9         MR. DILLARD:  Let me withdraw the I don't think it

10    needs construction because they have indicated that

11    toggling between two different screens would meet the

12    limitation.  I do think that simultaneous presence of the

13    two displays is warranted.

14         THE COURT:  Okay.  Why don't we hear from the

15    other side?

16         MR. HARNETT:  Okay.  Your Honor, I will be brief

17    again.  The problem with --

18         THE COURT:  Okay.  What are we now looking at?

19         MR. HARNETT:  We are looking at Slide 89, the

20    parties' respective constructions.

21         THE COURT:  Okay.  I am with you.  89.

22         MR. HARNETT:  Right.  We said there should be no

23    construction.  First display area and second display area

24    are self explanatory.  The problem we have is Vederi is

25    proposing to include rewrite the claim to include a
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   temporal limitation, a limitation about at the same time.

2   It is just not there.  It is not in the intrinsic

3   evidence.

4          THE COURT:  I agree.  It is not there.

5          MR. HARNETT:  Thank you.

6          THE COURT:  Okay.  Are we done?

7          MR. HARNETT:  I believe we are, your Honor.

8          THE COURT:  You have my rulings.  What is normally

9   done in this case?  Does somebody prepare an order?  Do I

10  prepare an order?

11         MR. HARNETT:  It depends on the court's

12  preference.  Ordinarily, the court will issue a formal

13  Markman ruling.  Other times the court will say look at

14  the transcript.

15         THE COURT:  I have made my rulings.  I am not

16  inclined to cite any authority.  As I said, I don't think

17  there is any directly on point.  So it will just go into

18  minute order referencing the transcript which I think is

19  abundantly clear.

20         MR. HARNETT:  Okay.  And if there is any issue, we

21  could properly notify you?

22         THE COURT:  Of course.  If the two of you want to

23  get together and embody what I said to something in

24  writing that you can all agree on and you would rather

25  have something like that to hold onto, that is fine too.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1        MR. HARNETT:  We will confer.

2        MR. DILLARD:  Thank you, your Honor.

3        THE COURT:  Okay.  Thank you.  Very long hearing.

4   I'm sorry I am so slow on this, but this is complicated

5   stuff and I try to get it right.

6            Thank you very much.  Very good argument by

7   counsel.

8        MR. HARNETT:  Thank you, your Honor.

9        (Proceedings concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1                                CERTIFICATE

2

3

4    I hereby certify that pursuant to Section 753, Title 28,

5    United States Code, the foregoing is a true and correct

6    transcript of the stenographically reported proceedings held

7    in the above-entitled matter and that the transcript page

8    format is in conformance with the regulations of the

9    Judicial Conference of the United States.

10   Date:  December 7, 2011

11

12    /s/ Katie Thibodeaux, CSR No. 9858, RPR, CRR.

13

14

15

16

17

18

19

20

21

22

23

24

25

        UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA