# EXHIBIT K

1  **DAVID A. DILLARD, CA Bar No. 97515**
   david.dillard@cph.com
2  **STEVEN E. LAURIDSEN, CA Bar No. 246364**
   steven.lauridsen@cph.com
3  **CHRISTIE, PARKER & HALE, LLP**
   **350 West Colorado Boulevard, Suite 500**
4  **Post Office Box 7068**
   **Pasadena, California 91109-7068**
5  **Telephone: (626) 795-9900**
   **Facsimile: (626) 577-8800**
6
7  Attorneys for Plaintiff,
   VEDERI, LLC
8
9              UNITED STATES DISTRICT COURT
10              CENTRAL DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| 12  VEDERI, LLC, a California limited liability company, | Case No.  CV10-07747-AK (CWx) |
| 13              Plaintiff, | **PLAINTIFF VEDERI, LLC'S OPENING CLAIM CONSTRUCTION BRIEF** |
| 14        vs. | |
| 15  GOOGLE, INC., a Delaware corporation, | **DATE:  November 22, 2011** <br> **TIME:  10:30 a.m.** <br> **CTRM:  TBD** |
| 16 | |
| 17              Defendant. | **Honorable Alex Kozinski** |
| 18  AND RELATED COUNTERCLAIMS | |
| 19 | |

20
21
22
23
24
25
26
27
28

CHRISTIE, PARKER & HALE, LLP

1
2

# **TABLE OF CONTENTS**

3    I.     INTRODUCTION...................................................................................1

4    II.    THE PATENTS AT ISSUE ....................................................................2

5           A.    Overview of the Inventions Described in the Patent
                  Specification ...............................................................................2

6           B.    Exemplary Claim .........................................................................5

7    III.   PERTINENT LEGAL STANDARDS.....................................................6

8    IV.    DISPUTED CLAIM TERMS .................................................................8

9           A.    The Preamble Language Is Not A Limitation on the Claims ...............8

10          B.    The Method Steps Are Not Required To Be Performed By A
                  User or User Terminal .................................................................11

11          C.    "First User Input Specifying A First Location In The
                  Geographic Area"........................................................................15

12          D.    "Arbitrary Address".....................................................................16

13          E.    "Image Source"...........................................................................18

14          F.    "Views Being Substantially Elevations" .......................................19

15          G.    "Associated With".......................................................................20

16          H.    "First Display Area . . . Second Display Area" ..............................22

17   V.     CONCLUSION .....................................................................................23

18
19
20
21
22
23
24
25
26
27
28

Exh K, Page 372

# **TABLE OF AUTHORITIES**

**PAGE**

## **CASES**

*Advanced Software Design Corp. v. Fiserv, Inc.*,
    641 F.3d 1368 (Fed. Cir. 2011)..................................................................10, 11

*Bell Communications Research v. Vitalink Communications Corp.*,
    55 F.3d 615 (Fed. Cir. 1995)................................................................................11

*Bell & Howell Document Management Products Co. v. Altek Systems*,
    132 F.3d 701 (Fed. Cir. 1997)................................................................................7

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
    388 F.3d 858 (Fed. Cir. 2004)................................................................................7

*Carman Industrial, Inc. v. Wahl*,
    724 F.2d 932 (Fed. Cir. 1983)................................................................................8

*E. I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
    849 F.2d 1430 (Fed. Cir. 1988), *cert. denied* 488 U.S. 986 (1988)................7

*Environmental Designs, Ltd. v. Union Oil Co.*,
    713 F.2d 693 (Fed. Cir. 1983)..............................................................................15

*Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*,
    93 F.3d 1572 (Fed. Cir. 1996)................................................................................7

*Exxon Chemical Patents, Inc. v. Lubrizol Corp.*,
    64 F.3d 1553 (Fed. Cir. 1995)................................................................................8

*Fonar Corp. v. Johnson & Johnson*,
    821 F.2d 627 (Fed. Cir. 1987)..........................................................................7, 22

*Glaxo Group Ltd. v. Apotex, Inc.*,
    376 F.3d 1339 (Fed. Cir. 2004)........................................................................8, 14

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*,
    381 F.3d 1111 (Fed. Cir. 2004)..............................................................................6

CHRISTIE, PARKER & HALE, LLP

Exh K, Page 373

Case 2:10-cv-07747-FMO-CW   Document 83   Filed 05/04/12   Page 5 of 54   Page ID #:780

1    *Kinik Co. v. ITC,*

2         362 F.3d 1359 (Fed. Cir. 2004).............................................................7

3    *Kropa v. Robie,*

4         187 F.2d 150 (C.C.P.A. 1951) ............................................................11

5    *Markman v. Westview Instruments, Inc.,*

6         52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996)...............6

7    *Phillips v. AWH Corp.,*

8         415 F.3d 1303 (Fed. Cir. 2005)...............................................6, 7, 19

9    *Rhine v. Casio, Inc.,*

10        183 F.3d 1342 (Fed. Cir. 1999).............................................................8

11   *Southwall Techs. v. Cardinal IG Co.,*

12       54 F.3d 1570 (Fed. Cir. 1995)..........................................................7, 22

13   *Uniloc USA, Inc. v. Microsoft Corp.,*

14       632 F.3d 1292 (Fed. Cir. 2011)......................................................9, 10

15   *Vanderlande Industrial Nederland BV v. International Trade Commission,*

16       366 F.3d 1311 (Fed. Cir. 2004)...........................................................7

17   *Vitronics Corp. v. Conceptronic, Inc.,*

18       90 F.3d 1576 (Fed. Cir. 1996) ............................................................6

19                            **STATUTES**

20   35 U.S.C. 112 ...................................................................................14

21   Manual Of Patent Examining Procedure § 608.01(n)...........................14

22

23

24

25

26

27

28

CHRISTIE, PARKER & HALE, LLP

## I.  **INTRODUCTION**

Plaintiff Vederi, LLC ("Vederi") is the owner of U.S. Patent Nos. 7,239,760 (the "'760 patent"), 7,577,316 (the "'316 patent"), 7,805,025 (the "'025 patent") and 7,813,596 (the "'596 patent") entitled "System and Method for Creating, Storing and Utilizing Images of a Geographic Location."[1] (Collectively, the '760, '316, '025 and '596 patents are referred to herein as the "patents-in-suit" or the "asserted patents.").[2]  All of the patents-in-suit claim priority to a provisional application filed October 6, 2000.  The patents-in-suit disclose and claim, *inter alia,* methods, systems, and composite ground-level images for enabling visual navigation of a geographic area from a user terminal.

The technology described and claimed in the patents-in-suit includes many aspects.  An example of one such aspect is the provision of a ground level composite image along with a map of the geographic area.  Vederi alleges that Defendant Google, Inc. ("Google") creates, uses, markets, sells, and offers for sale throughout the United States and commercially exploits the inventive methods and composite images for enabling ground level, visual navigation of a geographic area from a user terminal by its "Street View" service.

The parties now seek the Court's construction of eight terms and phrases from the claims of the asserted patents.[3]  Each of Vederi's proposed constructions is based on the plain language of the claims as well as the embodiments of the inventions described in the specification.  Google's constructions, however, read additional, unsupported limitations into the claims, in an effort to improperly

---

[1] The '760 Patent has a slightly different title than the other patents in suit: "System and Method for Creating, Storing and Utilizing Composite Images of a Geographic Location."

[2] The patents-in-suit were previously filed as Exhibits A-D to the Complaint.

[3] A complete recitation of asserted claims is attached as Exhibit A. A chart depicting all of the disputed terms and phrases is attached as Exhibit B. A chart depicting two construction agreed upon by the parties is attached as Exhibit C.

-1-

1    narrow the claims and avoid infringement.  The Court should therefore adopt

2    Vederi's proposed constructions.

3    **II.    THE PATENTS AT ISSUE**

4       **A.    Overview of the Inventions Described in the Patent Specification**

5          The patents-at-issue all claim priority to the same provisional application

6    filed in October 2000.  The patents also result from a series of continuing patent

7    applications and therefore all share the same specification.

8          The patents disclose a method for enabling visual navigation of a

9    geographic area from a user terminal.  Unlike other systems that had been

10   attempted before 2000, the invention claimed here provides a uniquely efficient

11   and effective way to collect, process, store, and retrieve images of a geographic

12   area, as well as other information about objects in the area.  For example, the

13   geographic area may be a street, and the claimed invention enables a user to view

14   composite images of the objects on each side of the street, as well as information

15   about businesses depicted in the images.  As explained below, the claimed

16   invention provides convenient access to large amounts of information, despite the

17   significant limits on computer storage and data transmission back in 2000.

18         In the preferred embodiment of this invention, a host computer or server

19   stores the composite images along with their associated geographic information.

20   The server receives inquiries about a location within a geographic area.  For

21   example, a user may enter an address of a location, enter the geographic

22   coordinates of the location, or select the location on a map.  The server retrieves

23   composite images associated with the selected location and displays those images

24   along with a map of the area and information on the businesses in the area. The

25   server may display these images and information on a remote user terminal such

26   as a personal computer, a set-top box, a personal digital assistant, and similar

27   devices, such as a smart phone. ['760 Patent col. 11 ln. 54 to col. 12 ln. 5.]

28         In an alternate embodiment of the invention, all of the images and

-2-

CHRISTIE, PARKER & HALE, LLP

geographic information are stored locally on the user terminal, and the user terminal performs all of the steps described in the patent without any communication to a remote server. ['760 Patent col. 12 lns. 20-28.]

Below is a reproduction of Figure 16 of the patents-in-suit showing a computer interface of the inventor's first working prototype called Scout Tool. Below that is a screen shot of the inventor's first commercial embodiment, called StreetBrowser, which appeared on the City of Pasadena website in 2001.





-3-

CHRISTIE, PARKER & HALE, LLP

1    The composite images are generated from image frames captured by an

2    image recording device, such as a camera, moving down a street capturing images

3    of the objects in the geographic area. A GPS receiver and inertial navigation

4    system provide the position of the camera as the image frames are being captured.

5    The image frames are indexed with the position data and are stored in an image

6    database. ['760 Patent at Abstract and col. 2 lns. 26-32.] The computer

7    synthesizes image data from the recorded images to create composite images

8    depicting a view of the objects from a particular location. In one embodiment,

9    the composite image provides a view of a given location that is wider than any

10   single view shown in one of the captured image frames. ['760 Patent col. 2 lns.

11   33-38.] The creation and storage of composite images allows the claimed

12   invention to store a large amount of image data about a geographic area, while

13   using less space to store the image data and less bandwidth to transmit the images

14   and information to a remote user terminal, which was particularly important given

15   the slow transmission speeds available in 2000.

16   Another advantage of the claimed invention over the prior art is that the

17   invention uses street segment data, rather than individual addresses, to organize

18   and store the composite images. As a result, the images do not need to be

19   matched exactly to an individual address, and there is no need to gather or store

20   information about the exact location and span of each address along a street. This

21   is accomplished by dividing each street into segments that correspond to groups

22   of addresses, as follows:

23   In step 64, the computer 28 segments the trajectory taken by the

24   recording camera 10 into multiple segments and labels each

25   segment with identifying information about the segment. For

26   example, if the camera traverses through various streets, the

27   computer 28 segments the trajectory into multiple straight street

28   segments and associates each street segment with a street name

-4-

CHRISTIE, PARKER & HALE, LLP

and number range. In step 66, the computer 28 generates a series of composite images depicting a portion of each segment, and in step 68, stores each composite image in the image database 32 along with the identifying information of the segment with which it is associated.

['760 Patent at col. 6 lns 43-54.] Thus, the images are associated with street segments, rather than being individually matched to exact addresses. This significantly reduces data entry. Then, when a user enters an address, the system identifies the street segment that encompasses that address, and calculates where along the segment that address would fall – regardless of whether that address actually exists as an assigned address along that segment. This calculation is done based on the street segment information as well as known information regarding the physical distance normally allocated between street numbers. The system then provides the composite image closest along the segment to the requested location. This facilitates easy and quick data retrieval. [*See* '760 Patent col. 13 ln. 41 to col. 14 ln. 8.]

By providing composite images of the area, and by associating these images with street segments, rather than specific, individual addresses, the resulting invention provides a fast and efficient way to enable visual navigation of a geographic area.

**B. Exemplary Claim**

Claim 1 of the '316 Patent provides context for the majority of the disputed claim terms:

> 1. **In a system including an image source and a user terminal having a screen and an input device, a method for enabling visual navigation of a geographic area from the user terminal, the method comprising:**
>
> **receiving a first user input specifying a first location**

-5-

in the geographic area;

retrieving from the **image source** a first image associated with the first location, the image source providing a plurality of images **depicting views** of objects in the geographic area, **the views being substantially elevations** of the objects in the geographic area, wherein the images are **associated with** image frames acquired by an image recording device moving along a trajectory;

displaying **an icon** associated with an object in the geographic area;

**receiving a user selection of the icon**; and

identifying a second location based on the user selection.

## III.  PERTINENT LEGAL STANDARDS

The claims of a patent define the legal scope of protection afforded the invention. To determine whether there is infringement of a U.S. patent, one must first ascertain the scope of the claims.  The legal meaning of each claim must be construed in light of the words of the claim, the specification, and the prosecution history.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

During the process of "claim construction," the court determines the meaning of disputed claim language.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).  In doing so, the court should rely primarily on intrinsic evidence: the claims, specification and file history of the patent-in-suit.  Proper claim construction analysis always begins with the words of the claim.  *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F. 3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v.*

-6-

CHRISTIE, PARKER & HALE, LLP

generates a series of composite images depicting a portion of each segment, and in step 68, stores each composite image in the image database 32 along with the identifying information of the segment with which it is associated." ['760 Patent at col. 6 lns. 49-54.] These composite images are generated from the original recorded images. Thus, Google's proposed construction excludes the specific teachings of the patents, and adopting that construction would therefore be erroneous.

The Court should therefore adopt Vederi's construction.

### F.   "Views Being Substantially Elevations"

| | Term | Vederi's Construction | Google's Construction |
|---|---|---|---|
| 8. | "depicting views … the views being substantially elevations" | front, back, or side views | vertical flat (as opposed to curved or spherical) depictions of front, back, or side views |

Both parties agree that "views being substantial elevations" refers to front, back, or side views of objects, e.g., houses, buildings, etc. in the geographic area. The only point of dispute is Google's added requirement that the views be vertical flat depictions, not curved. Google's proposed construction would preclude the claims from reading on any image of the street that does not appear flat.

Google's added "vertical flat" limitation is not found anywhere in the claims, nor is it supported by any language in the specification. And while the one visual example of a graphical user interface in the specification depicts a flat view (Fig. 16), this is not in itself dispositive, for nothing in the specification affirmatively requires that the view must be flat. Although the specification should be used to provide context, it cannot be used to read extraneous limitations into the claim. *See Phillips Petroleum Co.*, 849 F.2d at 1433.

In fact, the specification actually provides ample support for curved as well as flat depictions. For example, the '760 patent notes that "[t]he front and back cameras [used for recording images] may be equipped with **fish-eye lens** [*sic*] for

-19-

CHRISTIE, PARKER & HALE, LLP

providing a wide-angle view of the path" and that a "person skilled in the art should recognize . . . that additional cameras may be used to film the objects from different viewing directions. For example, a duodecahedron of cameras may be used to record the objects from all viewing directions" and "the side cameras need not face directly to the side of the street, but may face a slightly forward or backward direction to provide a look up or down of [*sic*] the path." ['760 Patent at col. 4 ln. 66 to col. 5 ln. 10. (emphasis added).] It would be obvious to one skilled in the art that these images captured by this multitude of cameras can be converted into curved or spherical composite images.

Thus, while Google's proposed construction once again attempts to read extraneous limitations into the claims, in direct contradiction to the patent specification, Vederi's proposed construction tracks the specification. As a result, the Court should adopt Vederi's construction.

### G.     "Associated With"

| | Term | Vederi's Construction | Google's Construction |
|---|---|---|---|
| 9. | "associated with" | related to | corresponding to |

Vederi does not believe that the phrase "associated with" needs construction. Vederi believes its meaning is clear in each of the various contexts in which it is used. Nevertheless, to the extent construction is deemed helpful, Vederi contends that its construction, "related to," is the most appropriate.

The Merriam-Webster online dictionary defines "associate" as "to bring together or into relationship in any of various intangible ways." [Lauridsen Decl. Ex. A.] This definition provides a great deal of flexibility, and the drafters of the patents-in-suit took advantage of this flexibility when using "associated with" in the asserted patents. Accordingly, Vederi's proposed construction of "related to" is defined as "to have relationship or connection." [Lauridsen Decl. Ex. B.] Google's proposed construction of "correspond to," on the other hand, simply

-20-

CHRISTIE, PARKER & HALE, LLP

1   proposed constructions.

2

3   DATED:  October 4, 2011                   Respectfully submitted,

4                                             CHRISTIE, PARKER & HALE, LLP

5

6                                             By:  /s/ David A. Dillard
                                                    David A. Dillard
7                                                   Steven E. Lauridsen

8                                             Attorneys for Plaintiff,
                                              VEDERI, LLC
9

10

11  RG PAS1140978.1-*-10/4/11 6:05 PM

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CHRISTIE, PARKER & HALE, LLP

-24-

Exh K, Page 383